JOHN L. HAVLIK, APPELLEE, v. ST. PAUL FIRE & MARINE INSURANCE COMPANY, APPELLANT.

FILED JUNE 29, 1910.   No. 16,105.

1. **Insurance:** PROOF OF LOSS: WAIVER: EVIDENCE. If a fire insurance company refuses to receive proof of loss on the ground that the policy was not in force at the time of the destruction of the property by fire, it thereby waives proof of loss, and cannot defend an action on the policy on the ground of false statements as to value or title in such rejected proof of loss, and in such case

evidence that the plaintiff made statements after the policy was assigned to him with the consent of the company, by which he exaggerated his interest in the property, is incompetent.

2. Trial: OFFER OF PROOF. An offer of proof is required for the purpose of making it appear to the court that the question put to the witness calls for competent evidence. Unless it does so without equivocation, it is not error to overrule the offer.

3. ———: SUBMISSION OF PLEADINGS TO JURY. It is not good practice to submit mutilated pleadings to the consideration of the jury, but unless it appears that the party complaining has been prejudiced thereby such action on the part of the court will not require a reversal of the judgment.

4. Appeal: SPECIAL FINDINGS. If the language of special findings of a jury is ambiguous and will reasonably admit of a construction that will make such findings agree with the general verdict, such construction will be adopted rather than reverse the judgment because inconsistent with the special findings.

APPEAL from the district court for Kearney county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*Greene, Breckenridge & Matters,* for appellant.

*Matt Miller* and *J. B. Pospisil,* contra.

SEDGWICK, J.

The plaintiff recovered against the defendant a verdict and judgment upon a policy of fire insurance in the district court for Kearney county, and the defendant has appealed.

One Norlin, who was the owner of a stock of goods in Axtell, sold the same to the plaintiff in May, 1907, and assigned to the plaintiff the policy of insurance issued by the defendant on the stock of goods. The consent of the defendant company to such transfer was indorsed upon the policy. The amount of the policy was $1,000, and there was other concurrent insurance. In August, 1907, the stock of goods was entirely destroyed by fire. In September the plaintiff notified the defendant of the fire and made out and forwarded to the defendant formal proof of loss. In this proof of loss he made the following state-

ment: "I was the owner of the entire property covered by said policy, No. 893." The plaintiff acknowledged the receipt of this notice and proof of loss, and in doing so, among other things, said: "What purports to be a notice and proof of loss was also received. We wish to object to the said proof for the reason that our company is not liable under their policy on account of no notification having been given us as to the real ownership of the property insured, which non-liability you were advised of in my letter of September 2, 1907. We hold the proof subject to your order."

1. The first assignment of error discussed in the brief is that the court erred in striking out a part of the defendant's answer and in refusing proof in support thereof. The answer admits that Norlin was the owner of the goods; the issue of the policy to Norlin; that Norlin sold the property insured to plaintiff and assigned the policy to him; and that the defendant by its duly authorized agents indorsed on the policy its consent to such transfer. The answer then alleges two defenses to the action: First, that at the time of the transfer of the property and insurance by Norlin to the plaintiff the plaintiff "falsely and fraudulently represented" to defendant that he was the sole owner of said stock of goods; and, second, that in his proof of loss he made false statements that he was the unconditional and sole owner of the stock of merchandise destroyed. The motion of the plaintiff was to strike out the last named defense "for the reason that defendant denies that the policy in question was in force, and alleges that the same was not in force at the time of the fire and are (is) therefore precluded from setting up any of the clauses of said policy as a defense to plaintiff's cause of action." Of course, the reason given in the motion is not a good one. A defendant may plead as many defenses as he has, whether legal or equitable, or both. The allegation of false statements in making proof of loss is not inconsistent with the allegation that the policy was not in force at the time of the fire. A defendant does not waive

one defense by pleading another that is consistent with it. The test is whether the evidence necessary to prove one defense would tend to disprove the other. The company can waive a defense; and it is generally held that if it refuses settlement on the ground that the policy was not in force at the time of the fire such refusal relieves the insured from the necessity of furnishing the formal proof of loss. This is upon the theory that if there is no valid policy of insurance on the property it is immaterial, so far as the company is concerned, whether the property was of great or little value or whether the property was or was not in fact destroyed by fire. But this rule of waiver of proof of loss and other defenses relates to negotiations or acts of the parties before suit; it has nothing to do with pleading. When suit has been begun the company may avail itself of the statute and plead as many defenses as it claims. If any of these defenses have in fact been waived this is a matter of reply and proof on the part of the plaintiff. The question then presented by this assignment is whether the defendant has been prejudiced by this action of the court.

Many authorities hold that false statements in the proof of loss will forfeit the policy, whether or not the company is in any way injured by such statement, but a contrary rule has been established in this state. Unless such false statements affect the risk they are not cause for declaring the policy void. *Springfield Fire & Marine Ins. Co. v. Winn*, 27 Neb. 649. It follows from this principle that it must appear that the defendant acted upon such false statements, or was in some manner prejudiced or affected by them. No such allegations were contained in the answer. The allegation is that the proof of loss was "furnished to defendant company" without alleging that it was acted upon or even received by the defendant; and the proof in the record shows without contradiction or attempt or offer of denial that the proof of loss was refused by the company on the ground that no policy was in force, and such proof was therefore unnecessary. Proof

of loss tendered but not received could not prejudice the company; and by refusing the proof it waived the right to rely upon it or its representations. The record upon the presentation and ruling upon the motion shows that the question determined by the court was whether the defendant company by refusing to receive the proof of loss waived the objections thereto which it was seeking to urge by this answer. We do not think that the defendant should now be heard to complain of the formality of the proceeding in which that question was rightly determined.

2. The defendant insisted upon the trial that the plaintiff had made false statements in which he had represented the property to be of much more value than it really was, and had falsely represented his title and interest in the property, and that by reason of these false statements the policy had been forfeited. The court instructed the jury that statements of this kind after the policy had been assigned to the plaintiff with the consent of the company would not invalidate the policy. It is very strongly insisted that this instruction was erroneous. It is argued that "the question is not one of title, but of actual and substantial ownership, and whether Havlik's interest in the stock of merchandise was of such a nature that he would have sustained the whole loss if the property had been destroyed without insurance." The defendant has cited a number of authorities upon this proposition, but we think that he has not argued the real question involved. There is no doubt that one may have the legal title and still not be the sole owner, and in such case his insurable interest may be much less than the value of the property, but this is not the legal question involved in the instruction, when the instruction is taken in connection with the other instructions in the case. The defendant also insisted that the policy was void; that it had been forfeited by the plaintiff because of false statements that he had made in his proof of loss. These false statements relating to the amount of his interest in the property would have avoided the policy if the defendant had re-

ceived the proof and acted upon it; but the court by the instructions complained of, in effect, tells the jury that in this particular case, in which there was no written application for insurance, and in which the plaintiff was not asked for a statement in regard to his interest in the property before he received the insurance, the company, by rejecting the proof of loss and placing their defense upon the invalidity of the policy, waived the objection which it might otherwise have made to the proof of loss, and that statements in the rejected proof of loss or false statements exaggerating the interest of the plaintiff in the property made after he obtained the insurance were immaterial under the evidence in this case, and in this, as we have already seen, the court was right.

3. It is said in the brief that the court erred in excluding proof of representations made by the plaintiff at the time and before he received the insurance to the effect that he was the sole owner of the insured property. As before stated, there was no written application for the insurance and no request of the insured for statements in regard to his interest in the property. It is not necessary for us to determine what the effect of oral statements of this nature to the company's agent prior to obtaining the insurance would be. The company had already introduced the evidence of Mr. Norlin in which he stated that the consent of the company to the transfer of the policy was indorsed thereon "about the same time" that the stock of goods was turned over to the plaintiff, and then when Mr. Warren, the company's agent, was upon the witness stand he was asked whether he had any conversation with Mr. Havlik relative to the ownership of these goods; he answered that he had, and he was asked to state that conversation, which was objected to on the ground that "no time was fixed." He then stated that the conversation was on the 13th day of June, which was more than two weeks after the goods were transferred to the plaintiff, and was more than two weeks after the consent of the company was given according to the date affixed to that

instrument. He was then asked again to state what the conversation was, which was objected to as incompetent because the conversation "took place some time in June." Then the defendant's attorney offered to prove that on the 13th day of June the plaintiff represented to the witness that he was the sole owner of the goods, and in connection with that offer recited "that date being prior to the date when the policy in his possession was delivered." Evidently the court did not understand this to be an offer to prove that the written consent of the company was not in fact delivered on the date that it bears, and that this conversation took place before the actual delivery of the written consent. As we have already seen, statements that he was the sole owner of the goods made after he became the owner of the insurance with the consent of the company would be incompetent, even if false, the right to forfeit the policy on that ground having been waived by the company.

4. When the court made the order striking out the part of the answer above referred to, it was literally stricken by the judge by drawing the pen through the lines of the answer, and the judge also wrote on the margin the words: "Stricken out by the court." The pleadings in this condition were given to the jury when it retired. This action of the court is complained of. This method of submitting cases has been frequently criticised. *Murray v. Burd,* 65 Neb. 427; *Parkins v. Missouri P. R. Co.,* 4 Neb. (Unof.) 1; *Sioux City & P. R. Co. v. Finlayson,* 16 Neb. 578. The issues tried should be plainly stated to the jury, and only the issues that are left to the jury for its determination; but it does not appear that this action of the court affected the verdict in this case. It is insisted in the brief that this proceeding emphasized the fact that the court was acting upon a wrong theory, but it is not pointed out that this action of the court itself prejudiced the rights of the defendant in any way so as to require a reversal of the judgment.

5. The defendant complains of the amount of the re-

31

covery. The argument is that the whole value of property insured and destroyed was not as great as was collected thereon by plaintiff from concurrent insurance, together with the amount recovered by the plaintiff in this action. The jury found specially "the fair cash value of the property consumed by fire on August 18, 1907, in the store building occupied by John L. Havlik to be $4,450, and the amount of insurance received by the plaintiff from other concurrent insurance on the stock of merchandise in question consumed by fire to be $3,450." The difference of $1,000 with interest for one year and nearly four months would be the amount of the general verdict, $1,092.55. It is urged that, if the value of the fixtures is deducted from the value of the property destroyed as found by the jury, the remainder would represent the value of the stock of merchandise and would be but little more than the amount that the plaintiff has already received from the concurrent insurance on the merchandise as found by the jury. The value of the fixtures does not appear to have been contested by the parties. The only evidence on that point which is pointed out in the briefs is found in the proof of loss prepared by the plaintiff and offered to the company. In that paper it is stated that the value of the "store fixtures" is $930, and the whole value of the goods and fixtures is stated to be $6,455. If we deduct the $930, as the defendant suggests, from the value of the "property consumed by fire," as found by the jury, $4,450, the remaining $3,520 will be only $70 more than plaintiff has already received from concurrent insurance according to the special finding. This reasoning is upon the assumption that the jury intended to find the value of the property burned, including the fixtures, and at the same time, in finding the concurrent insurance collected, intended to consider only the merchandise. Such finding could not be made serviceable in determining the real issues without a further finding as to the value of the fixtures. There was no allegation in the answer of any special agreement between the parties as to concurrent

insurance, or any damage to defendant or advantage to plaintiff arising therefrom. It was not alleged in the answer that the plaintiff had collected any amount whatever on concurrent insurance. There was no evidence, so far as we have observed, as to value of the fixtures, unless the statement above referred to in the offered proof of loss be regarded competent evidence. That paper was not offered for the purpose of proving values, and apparently not considered at the time as furnishing proof of such matters. The policy in suit not covering fixtures, there was no serious contest in regard to the fixtures or the value thereof. The jury were told plainly that, unless the value of the property covered by plaintiff's policy exceeded the amount collected by him from concurrent insurance on the same property, he could not recover, and in no event could he recover more than such excess. The general verdict in favor of plaintiff is equal to the difference between the value of the property and the amount collected on concurrent insurance as found by the jury, together with legal interest thereon. In the light of all these conditions, it seems more reasonable that the jury intended the same property in the one finding called the "property consumed by fire in the store building," and in the other finding "the stock of merchandise in question," than that it was intended to include the fixtures in the one valuation and exclude them from the other, and so leave the necessary conclusion to conjecture. Thus the general verdict and the special findings agree, and both are supported by the evidence.

If these conclusions are justified, there is no error requiring a reversal of the judgment.

AFFIRMED.

LETTON, ROOT and ROSE, JJ., concur in the conclusion.

FAWCETT, J., dissents.