HARTMANN VACKINER, APPELLANT, v. MUTUAL OF OMAHA, INSURANCE COMPANY, APPELLEE.

156 N. W. 2d 163

Filed February 16, 1968. No. 36697.

Homer L. Hurt, Jr., for appellant.

Sidner, Gunderson, Svoboda & Schilke, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

This claim on an insurance policy with provisions for hospitalization, surgical, and medical benefits was dismissed at the close of all the evidence. The question is whether the evidence establishes as a matter of law that the policy was voidable for fraud.

Plaintiff, then age 71 but now deceased, signed the application form on March 18, 1963. An ink "No" appears opposite every question relating to health, the questions reading in part: "Have you * * * ever had, or been told you had, or received advice or treatment for: * * * heart * * * trouble, * * * bladder trouble, prostate trouble, * * * Mental or nervous trouble * * *? Have you * * * ever had, or been told you had, or received advice or treatment for: (a) any physical conditions * * * not mentioned above, or (b) any symptoms of ill health? (Give details below)."

The claim is based on the transurethral prostatic resection and the perineal biopsy performed on plaintiff July 19, 1963. After discovery of an adverse medical history defendant on August 29, 1963, notified plaintiff of cancellation, tender of refund accompanying notification.

The medical history discovered by defendant begins with two hospitalizations of plaintiff in 1958. The diagnoses were angina pectoris secondary to myocardial ischemia and involutional psychiatric reaction for which plaintiff received many electric shock treatments. He recovered fully. At the trial in 1967 he remembered so little that his counsel said: "The testimony shows that Mr. Vackiner agrees that if the medical records show that he was treated or * * * hospitalized, he is agreeing that they are correct."

On physical examination in 1953 plaintiff's prostate had been found small and smooth. A medical report in 1958 reads: "Hypertrophy Lateral Lobes of Prostate—Smooth No Nodules. * * * The patient is in very good condition for a man of 67." On June 21, 1963, a physician noted the following complaint: "Slowing of stream

* * * - up 3 or 4 times a night." Six days later plaintiff was seen by Dr. Henry Kammandel, a urologist. Plaintiff "had a slowing of the stream two years prior but didn't pay any attention to it until the three or four months before he saw me when it became aggravated." Such symptoms which are referable to diseases of bladder and prostate are insufficient for diagnosis. Plaintiff testified by deposition in 1963 as follows: "Q- Why were you interested in this kind of insurance then? A- Well, I can't - I had some water trouble from a long time * * *. And it was already getting slower and slower and slower and I figured—." Interrupted by counsel, plaintiff did not say what he had "figured."

Defendant's agent Edward F Gabrukiewicz had solicited the application at plaintiff's home. He was given no information about prior hospitalizations or symptoms of bladder or prostate disease. The extent of his investigation at the time is in dispute. Plaintiff's deposition shows that Gabrukiewicz inquired about prior hospitalizations. In the record of plaintiff's testimony at the trial admissions of no recollection are conspicuous. Other parts are as follows: Gabrukiewicz asked some health questions but not those printed in the application. Plaintiff read part of the application but not the questions. The answers were written before or after plaintiff signed. Gabrukiewicz filled in the answers subsequent to his departure. Plaintiff, a German emigrant with an eighth-grade education, did not testify fluently. His difficulty at the trial was mainly ascribable to complex questions, impaired hearing, and faulty memory.

Gabrukiewicz, according to his testimony, had read all the printed questions to plaintiff, who had answered, "No," to every one. Gabrukiewicz wrote the answers at the time. Plaintiff's wife, according to her testimony, was present in the room part of the time and within hearing distance all the time. She did not hear any such questions.

Gabrukiewicz delivered the policy which included a

facsimile of the application. Plaintiff intended to consult his son, a bank employee and former insurance agent. When the son examined the policy in March 1963, he did not read the application. Defendant's form letter, exhibit 31, reads in part: "Please review the photostatic copy of your application which is attached to and made a part of your new policy. When we insured you, our decision was based on information shown in your application. * * * if your personal health history * * * has not been included, please send us the correct or missing information within 10 days." The parties stipulated: "in the ordinary course of business" exhibit 31 would have been "mailed by the defendant but if said letter was received by the plaintiff its contents were not noted and plaintiff denies any knowledge of having received said letter."

A set of circumstances in which an insurer possesses a conditional power to avoid its contract is the following: A misrepresentation in the application for policy was made knowingly by the insured with intent to deceive. The misrepresentation deceived the insurer to its injury. See, § 44-358, R. R. S. 1943; Zimmerman v. Continental Cas. Co., 181 Neb. 654, 150 N. W. 2d 268; Vackiner v. Mutual of Omaha, 179 Neb. 300, 137 N. W. 2d 859.

We limit the misrepresentation issue to the prostate condition. When plaintiff signed the application, he knew that the slowing of his urinary stream was an aggravated condition. He had "figured." Some treatment was indicated, and prostate surgery is not uncommon. Other circumstances relevant to knowlededge and intent are the nondisclosure of prior hospitalizations, the nature of the testimony concerning execution of the application, defendant's form letter, and the review of the policy by plaintiff's son. The evidence establishes as a matter of law that defendant was deceived to its injury by this misrepresentation which was made knowingly by plaintiff with intent to deceive.

The judgment is affirmed.

AFFIRMED.