_____

No. 95-3083
_____

Leo McCullough, doing business      *
as Video Unlimited,            *
                                  *
         Appellee,          *
                                  *  Appeal from the United States
     v.                  *  District Court for the
                                  *  District of Nebraska.
State Farm Fire & Casualty      *
Company,                  *
                                  *
         Appellant.        *

_____

Submitted:  January 9, 1996

Filed:  April 4, 1996
_____

Before MAGILL, REAVLEY,* and HANSEN, Circuit Judges.
_____

MAGILL, Circuit Judge.


Appellee Leo McCullough insured his videotape rental business, Video Unlimited, against fire and theft under a policy issued by appellant State Farm Fire and Casualty Company (State Farm).  McCullough submitted claims under the policy for a fire and for a subsequent burglary.  State Farm denied coverage, alleging that McCullough had committed arson and fraud, thereby voiding the policy.  After a bench trial, the district court[1] found that McCullough's son, who was McCullough's de facto business partner,

_____

*THE HONORABLE THOMAS M. REAVLEY, United States Circuit
Judge for the Fifth Circuit, sitting by designation.

[1]On agreement of the parties and pursuant to 28 U.S.C.
§ 636(c), the case was referred to a United States Magistrate Judge
for disposition.

had committed arson, and ruled that McCullough was barred from recovering for losses caused by the fire. The district court also held that, under Nebraska law, McCullough's fraud and arson did not void the entire policy. The district court held State Farm liable for losses stemming from the unrelated burglary, and State Farm appeals. Because we disagree with the district court's interpretation of Nebraska law, we reverse its judgment for McCullough on his theft claim.

## I.

McCullough purchased Video Unlimited, a videotape rental business in South Sioux City, Nebraska, in 1990 from his son and daughter-in-law, who remained involved with the business.[2] McCullough obtained fire and theft insurance from State Farm on Video Unlimited with an $8000 limit. The business struggled, and in 1991 it operated with losses averaging $495 per month. During 1992, these average losses reached $2563 per month. In September 1992, McCullough increased the insurance coverage on Video Unlimited to an $80,000 limit.

Video Unlimited suffered a fire on January 4, 1993. McCullough claimed that the fire caused a loss of $21,633 in smoke and water damage and a projected loss of $48,588 income to the business. McCullough promptly reported this as an accidental fire to State Farm. On the same day as the fire, State Farm provided McCullough with a $3000 supplementary advance payment under the policy. On January 16, 1993, Video Unlimited was burglarized, and $25,789 in video merchandize was stolen.

On March 29, 1993, McCullough submitted separate proofs of

---

[2]McCullough's daughter-in-law worked at Video Unlimited, and McCullough's son managed the business and was responsible for staffing, purchasing, bank deposits, bill paying, and tax form filing for sales tax.

loss for his fire and theft claims to State Farm.  State Farm denied McCullough's claims,[3] alleging that the January 4th fire had been caused by arson and that McCullough had misrepresented his projected loss of income.  State Farm returned McCullough's premium of $149.73 on June 11, 1993.  McCullough brought suit in Nebraska state court to recover under his insurance policy with State Farm, and State Farm removed the case to the federal district court under diversity jurisdiction.

The district court found that McCullough had intentionally misrepresented the amount of projected future income, which was incompatible with the monthly losses incurred by Video Unlimited before the fire.  The district court also found that McCullough's son, who was his de facto partner, had intentionally set the fire.  Although McCullough claimed that a malfunctioning hot plate behind a sales counter had started the fire, an expert witness testified that the hot plate could not have been the cause of the fire, which originated in the basement.  Investigators found evidence that the fire had multiple points of origin, and that accellerants had been used at the fire scene.  Consistent with a case of arson, firefighters had discovered a soda machine obstructing the stairway to the basement, impeding their access to the fire.  Finally, Video Unlimited's burglar alarm indicated that no entries had occurred in the building during the night before and morning of the fire, and McCullough's son was the only person who had the opportunity to cause the fire.  The district court denied McCullough's claim based on fire damage, and it granted judgment to State Farm on its $3000 counterclaim for the advance payment.

State Farm argued that arson and fraud voided McCullough's insurance policy, and that State Farm was not liable for losses

_____

[3]See Appellant's App. at 45 (June 7, 1993 letter denying recovery for fire loss); Appellant's App. at 54 (June 9, 1993 letter denying recovery for theft loss).

incurred during the subsequent burglary.  McCullough's policy contained a clause titled "Concealment, Misrepresentation or Fraud," which provided:

> This policy is void in any case of fraud by you as it relates to the policy at any time.  It is also void if you or any other insured intentionally conceal or misrepresent a material fact concerning . . . a claim under this policy.

Mem. Op. & Order at 10 (July 11, 1995).

The district court, while suggesting that "[h]ad the theft occurred after the submission of the proof of loss on the fire, [State Farm] might be in a better position to argue the avoidance," id. at 16, held that "the mere success of a fraud-based defense on the fire claim does not void the policy as to the theft claim notwithstanding the 'concealment, misrepresentation or fraud' policy provision involved in this case." Id. Because State Farm had presented "no evidence . . . showing that the fire and theft were related events or that the theft claim involved independent fraudulent conduct by the insured," id., State Farm was held liable for the theft claim.

McCullough does not challenge the district court's findings of fact as to arson and misrepresentation, nor does he challenge the district court's judgment in favor of State Farm on his claim for  fire-related losses.  The sole issue before this Court is whether the commission of arson and fraud voided McCullough's insurance policy, preventing recovery for the subsequent burglary.

**II.**

Nebraska law determines the rights of the parties in this diversity action, see Bell Lumber & Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995), and this Court reviews

the district court's interpretation of Nebraska law de novo.  See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

Under Nebraska law, "[a]n insurance policy is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made.  When the terms of the contract are clear, they are to be accorded their plain and ordinary meaning." Thorell v. Union Ins. Co., 492 N.W.2d 879, 882 (Neb. 1992).  We agree with State Farm that the plain meaning of the "concealment, misrepresentation, or fraud" clause in its policy with McCullough was clear: that the entire policy would be immediately void if McCullough committed fraud against State Farm.  It is undisputed that McCullough did commit fraud against State Farm through his son's commission of arson and his own report of the arson fire as an accident.  State Farm therefore proved its affirmative defense, see Robinson v. State Farm Mut. Auto. Ins. Co., 197 N.W.2d 396, 398 (Neb. 1972), and could be liable for McCullough's subsequent theft claim only if Nebraska law prohibits the voiding of the policy.

Although not cited by the district court, McCullough relies on Neb. Rev. Stat. § 44-358 to support his argument that State Farm may not avoid liability on his theft claim unless the arson and fraud contributed to the burglary.  The statute, titled "Policies; misrepresentations; warranties; conditions; effect," provides, in part:

> The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding.

Because the district court found no evidence of a connection

between the arson and the burglary,[4] McCullough contends that § 44-358 mandates that State Farm be liable for his theft losses.  We disagree.

Section 44-358, created "to protect the insured," <u>Zimmerman v. Continental Casualty Co.</u>, 150 N.W.2d 268, 271 (Neb. 1967), is a part of every insurance policy in Nebraska by construction.  <u>See</u> <u>Security State Bank of Eddyville v. Aetna Ins. Co.</u>, 183 N.W. 92, 93 (Neb. 1921).  First enacted in 1913, § 44-358 largely incorporates Nebraska common-law; <u>see, e.g.</u>, <u>Havlik v. St. Paul Fire & Marine Ins. Co.</u>, 127 N.W. 248, 249 (Neb. 1910) (noting that Nebraska follows minority rule that misrepresentations do not void policy unless they affect risk); <u>Springfield Fire & Marine Ins. Co. v. Winn</u>, 43 N.W. 401, 402-03 (Neb. 1889) (same).

Under § 44-358, an insurer may not void a policy because an insured misrepresents proof of loss unless the insurer relied on the misrepresentation to its injury.  <u>See</u> <u>Omaha Paper Stock Co. v. California Union Ins. Co.</u>, 262 N.W.2d 175, 179 (Neb. 1978).  The statute, however, "does not deprive an insurance company of the defense of fraud."  <u>Sorter v. Citizens Fund Mut. Fire Ins. Co.</u>, 39 N.W.2d 276, 279 (Neb. 1949).  Instead, § 44-358

> requires fair play; that an applicant for insurance must exercise towards the company the same good faith which may rightfully be expected of it; and that there be fair dealing by both parties.  If untrue statements of the insured, material to the risk, are made to the company

---

[4]State Farm argues that the district court erred in finding no connection between the fire and the burglary, alleging that either the fire damaged Video Unlimited's burglar alarm, or that McCullough staged the burglary.  While it is certainly possible, perhaps even likely, that the burglar alarm was damaged in the fire, or that an arsonist would turn to burglary, State Farm had an opportunity at trial to produce evidence to prove these allegations.  State Farm did not present such evidence, and we discern no clear error in the district court's findings of fact. <u>See</u> Fed. R. Civ. P. 52(a) (standard of review).

> and they are believed and acted upon by it . . . it is clear that the company was deceived to its injury, and the statute does not deprive it of a remedy.

Id. Thus, so long as the requirements of § 44-348 were met, State Farm had the option of avoiding the contract. See Glockel v. State Farm Mut. Auto. Ins. Co., 400 N.W.2d 250, 256 (Neb. 1987) ("[I]n Nebraska there is a common-law right to rescind or avoid insurance policies for material misrepresentations, which is recognized in and limited by § 44-358.").

To avoid liability, State Farm had the burden of proving that McCullough's misrepresentation and fraud "were made knowingly with intent to deceive, that the insurer relied and acted upon such statements, and that the insurer was deceived to its injury." White v. Medico Life Ins. Co., 327 N.W.2d 606, 609-10 (Neb. 1982). See also Vackiner v. Mutual of Omaha Ins. Co., 156 N.W.2d 163, 164-65 (Neb. 1968) ("A set of circumstances in which an insurer possesses a conditional power to avoid its contract is the following: A misrepresentation in the application for policy was made knowingly by the insured with intent to deceive. The misrepresentation deceived the insurer to its injury." (citing § 44-358)).

The district court's findings demonstrate that McCullough intentionally deceived State Farm both through the arson itself and when he immediately reported the fire as an accident. State Farm relied on McCullough's misrepresentation when it provided him with a $3000 supplemental advance payment. On the undisputed findings of the district court, we conclude that McCullough's arson and fraud constitute a breach "so material and substantial as to defeat the objects of the parties in making the contract," Calvert Fire Ins. Co. v. Unigard Mut. Ins. Co., 526 F. Supp. 623, 648 (D. Neb. 1980) (quoting Olson v. Pedersen, 231 N.W.2d 310, 315 (Neb. 1975)), aff'd without opinion, 676 F.2d 707 (8th Cir. 1982), and gave State

Farm the right to void the policy.

### III.

Having concluded that State Farm had the right to void McCullough's policy, we must decide precisely when the policy was voided. The district court suggested that McCullough's fraud could not vitiate the policy until after he had submitted formal proofs of loss. See Mem. Op. & Order at 16. We find no basis for this construction in the terms of § 44-358, which requires only that a breach "exist at the time of the loss and contribute to the loss" before an insurer may void the policy.

Requiring State Farm to cover McCullough's postarson theft claim would reward him for concealing the arson while punishing State Farm for thoroughly investigating a suspicious claim before denying it. Neither the district court nor McCullough have directed us to any Nebraska case or, indeed, to case law from any jurisdiction, which requires an insurer to maintain a policy after an insured has committed arson. Rather, Nebraska adheres to the sound rule that no arsonist should ever be allowed to profit from his crime; see, e.g., Continental Ins. Co. v. Gustav's Stable Club, Inc., 317 N.W.2d 734, 738 (Neb. 1982) ("Of course, the insured's wilful burning of the property would be an absolute defense to an action upon the policy." (quotations omitted)).[5]

---

[5]In applying a similar standard under Missouri law, this Court explained the rationale supporting this rule:

'To permit a recovery under a policy of fire insurance by one who has been convicted of burning the property insured, would be to disregard the contract, be illogical, would discredit the administration of justice, defy public policy and shock the most unenlightened conscience. To sustain such a judgment would be to encourage and give support to the current thoughtless and carping criticisms of the legal procedure, and to justify the jibe that the administration of the law is [a] legalized lottery.'

Connecticut Fire Ins. Co. v. Ferrara, 277 F.2d 388, 391 (8th Cir.) (quoting Eagle, Star & British Dominions Ins. Co. v. Heller, 140 S.E. 314, 323 (Va. 1927)), cert. denied, 364 U.S. 903 (1960).

We note that, under Nebraska law, an insurer may be estopped from voiding a contract "if after an unreasonable time after knowledge of the facts giving rise to the right, the [insurer] fails to declare a rescission," <u>Calvert Fire Ins. Co.</u>, 526 F. Supp. at 650, or if the insurer fails to return a premium after the misrepresentation is known, <u>see</u> <u>Dairyland Ins. Co. v. Kammerer</u>, 327 N.W.2d 618, 621 (Neb. 1982).  We find no basis for estoppel in this case.  State Farm timely declared McCullough's policy void after a thorough investigation of his claims, <u>see</u> <u>Calvert Fire Ins. Co.</u>, 526 F. Supp. at 650 (insurer need not act prior to full knowledge of breach), and State Farm returned McCullough's premium within days of denying his claim and declaring the policy void.

McCullough breached his insurance contract on January 4, 1993, when his son committed arson and he collected $3000 from State Farm. McCullough's breach therefore existed at the time of, and contributed to, State Farm's loss of $3000.  The requirements of § 44-358 were satisfied on the very day of the fire, twelve days before the burglary occurred.  We hold that § 44-358 did not require State Farm to maintain McCullough's policy beyond the moment of McCullough's breach and its own injury, and that the policy was therefore void prior to the theft losses.

## IV.

McCullough cannot rely on § 44-358 to protect him from the consequences of his wrongdoing in this case.  Due to McCullough's material breach, the proper resolution of this matter is to void the contract between the parties as of the day of the fire, when State Farm was injured by McCullough's fraud.  We affirm the district court's judgment of $3000 on State Farm's counterclaim,

and we reverse its judgment for McCullough on his theft claim.

Accordingly, we affirm in part, and reverse in part, the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.