RESERVE INSURANCE COMPANY, APPELLEE, V. ALEX
AGUILERA, APPELLEE, IMPLEADED WITH THE FIRST
NATIONAL BANK OF OMAHA, APPELLANT, ELIZABETH
BOSKIND, INTERVENER-APELLANT.

150 N. W. 2d 114

Filed April 14, 1967. No. 36374.

Gaines, Spittler, Neely, Otis & Moore, for appellant.

Shrout, Hanley, Nestle & Caporale, for intervener-appellant.

Eisenstatt, Morrison, Higgins, Miller, Kinnaman & Morrison, for appellee Reserve Ins. Co.

Levin & Gitnick, for appellee Aguilera.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is an action by plaintiff Reserve Insurance Company for a declaratory judgment seeking to void an automobile insurance policy ab initio on the ground that the policy was obtained by fraud, misrepresentation, and concealment of facts in the application for the policy. The defendant, Alex Aguilera, was the applicant and named insured; the defendant, First National Bank of Omaha, was a loss payee; and the intervener, Elizabeth

Boskind, was the widow of Harry L. Boskind, who was killed in an accident while the automobile involved was being driven by the defendant Aguilera. The district court entered judgment in favor of the plaintiff and against the defendants and intervener. The defendant bank and intervener have appealed.

The defendant Aguilera went to the Gem Insurance Center in Omaha in October 1963, and talked with an agent of plaintiff about automobile insurance. He returned on October 22, 1963, and completed and signed an application for a preferred driver's automobile insurance policy in the presence of the agent and paid the premium. The agent issued a receipt for the premium, and sent the application to the home office in Chicago where the application was reviewed and the policy issued on October 24, 1963. On the same day, an investigative report was requested and a motor vehicle driving record of Aguilera was ordered. On the 26th day of October 1963, an automobile driven by the defendant Aguilera was involved in an accident that resulted in the death of Harry L. Boskind. On November 13, 1963, the investigative report was completed and returned to the plaintiff. On November 14, 1963, plaintiff notified defendant Aguilera by letter that his policy was voided as of inception, and the premium was returned with the notice. The First National Bank of Omaha filed proof of loss December 17, 1963, and was advised to the same effect on December 20, 1963. Subsequently this action was brought by the plaintiff.

The particular representations relied on refer to Item 8, statements 2 and 3 of the application, later made a part of the policy. These are: "2. Had driver's license revoked or suspended? 3. Been convicted of a felony or misdemeanor?" Aguilera answered each question in the negative by a penned mark. The answers were admittedly false. The driver's license of Aguilera had been suspended in 1955, and he had been convicted of a felony. Aguilera contends that he made a full and complete

disclosure of both matters to the agent, but the agent advised him that the matters could be disregarded. The agent denies that a full or any disclosure was made of the facts relating to questions 2 and 3. The agent's denial of disclosure by the insured is strengthened by the "binder" provision immediately following item 8. That provision reads in part as follows: "Binder does not apply if answer to questions * * * 2, 3 * * * above is Yes * * *." Aguilera admitted that he asked the agent what that meant and was told that if any of that was not true, he wouldn't be covered.

The intervener contends that under the requirements laid down in Carpenter v. Sun Indemnity Co., 138 Neb. 552, 293 N. W. 400, the evidence did not establish that the misrepresentations were made knowingly by the insured with the intent to deceive. We deem it necessary only to note that the district court found that Aguilera had full knowledge of the falsity of the statements material to the risk, and that the statements were made with the intent to deceive. The record supports the findings.

The appellants also contend that under the provisions of section 60-538, R. R. S. 1943, which is a part of the Motor Vehicle Safety Responsibility Act, the liability of the insurer under the policy became absolute when the accident occurred. The first accident is not within the purview of the Motor Vehicle Safety Responsibility Act, nor does the act have any application to an insurance policy which has not been used as proof of financial responsibility in the future. Cohen v. Metropolitan Casualty Ins. Co., 233 App. Div. 340, 252 N. Y. Supp. 841; Buzzone v. Hartford Accident & Indemnity Co., 23 N. J. 447, 129 A. 2d 561; Hoosier Casualty Co. of Indianapolis, Indiana v. Fox (Iowa), 102 F. Supp. 214; Aetna Casualty & Surety Co. v. Simpson, 228 Ark. 157, 306 S. W. 2d 117.

There was no union mortgage clause here providing that a loss payable to the loss payee should not be

avoided by any act or neglect by the mortgagor or owner of the property. The bank contends that the ordinary loss payable clause here ought to be interpreted as a union mortgage clause or, in any event, the bank should be entitled to the 10-day notice of cancellation provided for in the policy.

It is tacitly conceded that the general rule is that under a simple loss payable clause in a policy of insurance issued to a mortgagor and payable to the mortgagee, as his interest may appear, the mortgagee is simply an appointee of the insurance fund whose right of recovery is no greater than the right of the mortgagor. Exceptions to the rule seem to be limited to situations in which the mortgagee paid for the insurance or procured the policy or where, under the circumstances, an independent contractual relationship exists between the mortgagee and the insurer. See State Credit Co. v. National Old Line Life Ins. Co., 122 Neb. 345, 240 N. W. 426.

Courts are ordinarily reluctant to hold that third persons have higher rights under a policy of insurance than the insured in the absence of express contractual or statutory provisions. A balancing of equities as between the insurance company and the bank adds little. Either, or both, could have protected themselves. It is undisputed that the insurance policy here was procured and paid for solely by Aguilera. We see no compelling reason to vest in the bank a right superior to that of Aguilera himself, nor to give validity in favor of the bank to an instrument void as between the parties. See Hoosier Casualty Co. of Indianapolis, Indiana v. Fox, *supra*.

The district court's finding that the loss payee had no greater rights under the policy than Aguilera was correct. The judgment is affirmed.

AFFIRMED.