CELESTER C. WHITE, APPELLANT, V. MEDICO LIFE
INSURANCE COMPANY, A CORPORATION, APPELLEE.

327 N.W.2d 606

Filed December 3, 1982. No. 81-569.

Daniel W. Ryberg, for appellant.

Lyle E. Strom of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CAPORALE, J.

This appeal results from the dismissal by the trial court of appellant's petition and the overruling of his motion for new trial. We affirm.

Plaintiff-appellant, Celester C. White, sought recovery from defendant-appellee, Medico Life Insurance Company (Medico). His first two causes were based on two insurance policies issued to White by Medico; the third purported cause alleged a concerted effort by Medico and its parent company, Mutual Protective Insurance Company (Mutual), to influence White to settle an allegedly undisputed claim in alleged violation of Neb. Rev. Stat. § 44-1525(9)(m) (Reissue 1978). Medico answered the first two causes by asserting White's failure to disclose fully his prior relevant medical history and by alleging that upon learning of the misrepresentations it had rescinded the policies. Medico answered the third cause by alleging it failed to state a cause of action and by incorporating the failure to disclose and rescission contained in its answer to the other causes.

White pled a breach of contract action, together with a statutory action, and sought money damages. Medico's answers asserted, in part, an equitable defense, i.e., that it had rescinded the policies in question. Whether the nature of an action is legal or equitable is to be determined from its main object, as disclosed by the averments of the pleadings and relief sought. *Hein v. M & N Feed Yards, Inc.,* 205 Neb. 691, 289 N.W.2d 756 (1980); *Roy v. Bladen School Dist. No. R-31,* 165 Neb. 170, 84 N.W.2d 119 (1957). Although a defendant may present any defense, legal or equitable, *Wischmann v. Raikes,* 168

Neb. 728, 97 N.W.2d 551 (1959), *Kelly v. Kannarr,* 118 Neb. 472, 225 N.W. 230 (1929), interposing an equitable defense does not convert an action otherwise at law into one in equity. 1 Am. Jur. 2d *Actions* § 7 (1962). This case, therefore, although the parties have briefed it as one in equity, presents actions at law tried without a jury. As such, the findings of the trial court have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong; the evidence must be considered in the light most favorable to the successful party, conflicts must be resolved in its favor, and it is entitled to the benefit of every inference which can reasonably be deduced from the evidence. *England v. Leithoff, ante* p. 462, 323 N.W.2d 98 (1982); *Hemenway v. MFA Ins. Co.,* 211 Neb. 193, 318 N.W.2d 70 (1982).

White's operative assignments of error are the trial court's findings that he misrepresented his past medical history to Medico, with the intent that Medico rely thereon; that those misrepresentations were material; that Medico did in fact rely upon them; that Medico was not in fact aware of past medical history to an extent that it would be estopped from relying upon them; that he, White, did not have a private cause of action under § 44-1525(9)(m); that there was no evidence Medico had conducted itself contrary to § 44-1525(9)(m) with such "frequency" as to constitute a violation thereof; the failure to find that any misrepresentation White may have made was knowingly false; and that the burden of proof was improperly shifted to White.

The record supports findings that Mutual, the related company of Medico, sold insurance to White in 1975 through its agent, Gerald Yeck. Yeck had previously sold White insurance while he was an agent with certain other insurance companies. The completed Mutual application which Yeck received in 1975 failed to disclose various relevant prior medical

history, including hospitalizations for heart and vascular disease and for back and lung problems. In truth and fact, the only prior medical history disclosed on the application for the policy was a truck accident which occurred in Ogallala, Nebraska. This was contrary to the information requested by the application form, which asked for various information regarding treatment which might have occurred during the preceding 5 years. The record also indicates that White failed to modify any of this submitted information, although he had the opportunity to do so when the insurer sent him a routine follow-up letter which requested the transmittal of such additional or modified information.

White obtained a disability benefit policy which Medico issued on September 26, 1976. The application for this policy also failed to reveal any of the prior relevant medical history other than the Ogallala truck accident.

White purchased a hospital confinement policy issued by Medico on January 8, 1977. The application for this policy again failed to reveal all of the relevant and material prior medical history, other than the Ogallala truck accident.

In 1977 and 1978 White received various hospital treatments for which he made claims under the September 1976 and January 1977 policies. Medico denied these claims after discovering White's prior medical history and elected to rescind both policies and to refund appellant the premiums he had paid.

There was conflicting testimony regarding the conversations between White and Medico's agents, and the contents thereof. In substance, White's evidence suggests that Medico knew about some or all of White's prior relevant medical history beyond the already disclosed Ogallala truck accident, while Medico's evidence suggests that it knew about nothing of significance other than the Ogallala truck accident.

Neb. Rev. Stat. § 44-710.14 (Reissue 1978) provides that the falsity of any statement in an application for insurance, such as those here in question, may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer. In *Zimmerman v. Continental Cas. Co.,* 181 Neb. 654, 150 N.W.2d 268 (1967), we held that that provision must be read in pari materia with Neb. Rev. Stat. § 44-358 (Reissue 1978), which provides: ''No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy, or prevent its attaching, unless such misrepresentation or warranty deceived the company to its injury. The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding.'' We then concluded that in order for misrepresentations in an application for insurance to constitute a defense to an action on the contract, the insurer must plead and prove, among other things, that the misrepresentations were made knowingly with intent to deceive, that the insurer relied and acted upon such statements, and that the insurer was deceived to its injury. In that case we reversed the judgment in favor of the insured's beneficiary pursuant to the jury's verdict because of an error in the instructions. In *Gillan v. Equitable Life Assurance Society,* 143 Neb. 647, 656, 10 N.W.2d 693, 698 (1943), we quoted with approval language in an earlier case, *Muhlbach v. Illinois Bankers Life Ass'n.,* 108 Neb. 146, 187 N.W. 787 (1922): '' 'Where the question in the application calls for an answer peculiarly within the knowledge of the applicant, an untrue answer re-

lating to a matter material to the risk and relied upon by the insurer will avoid the policy.' '' Therefore, when an applicant makes an untrue statement with respect to a material fact peculiarly within his knowledge, the finder of fact may, from the mere occurrence of the false statement, conclude it was made knowingly with intent to deceive. The trial judge, sitting as the finder of fact, found that White, in applying for and obtaining the two policies in question, "misrepresented to the defendant that he did not have certain prior physical disorders, which he in fact did have." Contrary to appellant's argument, that language, in the face of this record, constitutes a finding that appellant made the misrepresentations "knowingly." An ultimate fact fairly and reasonably inferable from the facts and circumstances proved is to be taken as established. *Kirkpatrick v. Chocolate Sales Corporation,* 127 Neb. 604, 256 N.W. 89 (1934); *Struve v. City of Fremont,* 125 Neb. 463, 250 N.W. 663 (1933). Moreover, we find no request for specific findings; in the absence of such, the trial court need only have made its findings generally for the appellee. Neb. Rev. Stat. § 25-1127 (Reissue 1979); *Lindgren v. City of Gering,* 206 Neb. 360, 292 N.W.2d 921 (1980); *Burgess v. Curly Olney's, Inc.,* 198 Neb. 153, 251 N.W.2d 888 (1977).

The trial court further found the misrepresentations to be material in nature. Ample evidence was adduced to substantiate this finding, namely, the testimony of the underwriter that had the true facts been disclosed they would have triggered further investigation by the company and would have ultimately resulted in nonissuance of the policies herein. This evidence also established the element of reasonable reliance by the insurer upon appellant's misrepresentations.

Appellant asserts that Medico had sufficient information such that it had a duty of further inquiry and should be estopped from reliance upon the misrep-

resentations. The only information of substance which Medico had was that concerning the Ogallala truck accident, and possible knowledge of a stabbing incident in 1971. However, the Ogallala hospital report gave no realistic hint of appellant's other health history, and the stabbing incident was more than 5 years old at the time that Medico's agent allegedly learned of it. The trial court was correct in concluding Medico was not estopped from denying coverage.

Appellant argues further that the court below erred by placing the burden of proof on him rather than on appellee. The record fails to reveal that such was the case. In any event, the record establishes that Medico offered ample evidence, as we have noted, to demonstrate that the representations made by White were false, that they were made knowingly with intent to deceive, that they were material, and that they were reasonably relied upon by Medico to its damage.

Finally, appellant urges that the trial court erred in two respects concerning the Nebraska Unfair Competition and Trade Practices Act, specifically, § 44-1525, which provides in pertinent part: "The following shall be unfair methods of competition and unfair or deceptive acts or practices in the business of insurance: ... (9) Committing or performing with such frequency as to indicate a general business practice any act which: ... (m) Fails to promptly settle claims, when liability has become clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage." He argues, firstly, the trial court should have held White has a private cause of action thereunder, and, secondly, it should have held Medico violated that section with such frequency as to constitute a general business practice.

These contentions are predicated on the allegation

that Medico and Mutual acted in concert to deprive White of benefits allegedly due him on the original Mutual policy in order to pressure him into compromising his claims under all of the policies.

White argues that enactment of the Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 et seq. (Reissue 1978), subsequent to the events involved in *Allied Financial Services, Inc. v. Foremost Ins. Co.,* 418 F. Supp. 157 (D. Neb. 1976), makes the late Judge Denney's holding, even if correct at the time, that the Nebraska Unfair Competition and Trade Practices Act, Neb. Rev. Stat. §§ 44-1522 et seq. (Reissue 1978), does not contemplate private suits but instead only vests powers and duties in the state Director of Insurance, who is empowered to enjoin and penalize certain prohibited acts, inapplicable here.

Section 59-1602 declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce to be unlawful. Section 59-1609 provides, among other things, that one injured in his business or property by violation of § 59-1602 may bring a civil action to, in addition to certain other items, recover his actual damages. From these two provisions White argues that irrespective of what the law may have been before the 1974 enactment of the Nebraska Consumer Protection Act, that act, together with the Nebraska Unfair Competition and Trade Practices Act, now provides a private cause of action for a violation of § 44-1525(9)(m).

Whether that is so need not be, and therefore is not, decided at this time. White's evidence in this regard establishes only that, prior to trial, the parties reached an agreement whereby White could cash the "refund of premium" checks for the two Medico policies without any prejudice to his claims, and that Medico's payment of any amount allegedly due on the Mutual policy would not affect any de-

fenses it might have. A pretrial agreement of this sort, coupled with the inferences White seeks to draw from the fact that payment under the Mutual policy was not made until after that agreement was reached, falls far short of establishing a violation of § 44-1525(9)(m), even if a private action were to exist and even if the statutory language were to fit the circumstances alleged.

The judgment of the trial court dismissing White's causes of action was correct.

AFFIRMED.