THOMAS H. GLOCKEL, PLAINTIFF, V. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A FOREIGN CORPORATION, DEFENDANT.

361 N.W.2d 559

Filed February 8, 1985.   No. 84-072.

Peter J. Peters, P.C., Warren C. Schrempp and Peter J. Hoagland, and Wallace Hopkins, P.C., and Steven M. Watson of Marks, Clare, Hopkins, Rauth & Cuddigan, for plaintiff.

Joseph K. Meusey and Joseph E. Jones of Fraser, Stryker, Veach, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for defendant.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ.

GRANT, J.

The U.S. District Court for the District of Nebraska, pursuant to Neb. Rev. Stat. § 24-219 (Cum. Supp. 1984), has submitted to us certain certified questions of law.

The facts underlying the controversy giving rise to the questions were recited to us by the district court, as follows:

Plaintiff, Thomas H. Glockel (hereinafter referred to as Glockel), applied to defendant, State Farm Mutual Automobile Insurance Company (hereinafter referred to as State Farm), for an automobile liability insurance policy on April 29, 1980. Glockel signed the application and paid $54.98 for the first 2 months' coverage. In his application Glockel listed one traffic violation, a stop sign infraction in October of 1979. State Farm's agent bound coverage on April 29, 1980, and, on or about the same day, forwarded the application to State Farm's regional office in Lincoln, Nebraska. The policy was issued to Glockel and his father.

The facts certified by the forwarding court further state:

Four days later, on May 3, 1980, Glockel was involved in an automobile accident that caused extremely serious injuries to one Leon Skank. At some point, the Lincoln underwriting office discovered that Glockel's Nebraska motor vehicle record revealed two traffic violations instead of just one. On May 7, 1980, Glockel gave a recorded statement to a State Farm investigator admitting

that he had received "two or three" speeding tickets in Council Bluffs, Iowa between June and August of 1979. State Farm thereafter convened a "claim committee" to evaluate the status of Glockel's policy. The claim committee determined that Glockel had made a material misrepresentation concerning his driving record. In a June 9, 1980, letter addressed to plaintiff Glockel and his father, State Farm advised that, because of Thomas Glockel's misrepresentations, it was rescinding the binder of insurance and declaring it void at its inception. State Farm also returned Glockel's $54.98 premium payment.

Kandis K. Skank, as Conservator for her husband, Leon, filed suit in the District Court of Douglas County, Nebraska, against Thomas Glockel alleging negligence in the May 3, 1980 operation of his motor vehicle. Her attorneys sent written offers to Glockel's attorney to settle the lawsuit for the $15,000 limit of Glockel's policy. Glockel's attorney communicated the offers to State Farm and demanded settlement. State Farm rejected the offers and refused to settle on the basis of its June 9, 1980 letter of rescission. The jury returned a verdict against Thomas Glockel substantially in excess of the policy limits.

Glockel's complaint in the United States District Court alleges negligence and bad faith by State Farm for refusing to settle the underlying lawsuit within the $15,000 policy limit. Mr. Glockel seeks a judgment against State Farm for the $15,000 insurance coverage and the amount by which the state court judgment exceeds the policy limit, plus interest and attorneys' fees. He further requests damages for mental and emotional distress, unfavorable publicity, and injury to his credit and reputation. State Farm, by affirmative defense, alleges that Glockel misrepresented material facts regarding his driving record in his application for insurance and that, under Nebraska law, State Farm may therefore rescind the policy and declare it void *ab initio*.

In connection with these facts, as set out above, we are premising our opinion on the facts as set out by the forwarding court. Pursuant to Neb. Rev. Stat. § 24-221 (Cum. Supp. 1984),

we accept the facts as set out in the certification request.

We, of course, make no determination or inference as to any of Glockel's allegations nor State Farm's defenses, but only direct this opinion to answering the legal questions presented to us. Those questions are:

1. Whether the *exclusive* method of terminating an automobile liability insurance policy is controlled by [Neb. Rev. Stat. §§ 44-515 to 44-521 (Reissue 1984)].

2. Whether, because of the provisions of [§ 44-515(1)(b)], an automobile liability insurance policy can only be *cancelled* for "material misrepresentations" once a policy of insurance has been issued.

3. Whether [Neb. Rev. Stat. § 44-358 (Reissue 1984)] is inapplicable to an automobile liability insurance policy.

(Emphasis in original.)

For reasons hereinafter set out, and with the qualifications hereinafter specified, (1) the first question is answered Yes, because Neb. Rev. Stat. §§ 44-515 to 44-521 (Reissue 1984) specifically provide for the cancellation of certain automobile liability insurance policies covering a specific limited class described therein; (2) the second question is answered No (possibly due to the somewhat ambiguous framing of the question, which was apparently adopted by the federal court from Glockel's motion filed in that court), because § 44-515(1)(b) also allows cancellation for other reasons; and (3) the third question is answered Yes, because Neb. Rev. Stat. § 44-358 (Reissue 1984) is inapplicable to the specific type of automobile liability insurance policies defined in Neb. Rev. Stat. § 44-514 (Reissue 1984), while § 44-358 does apply to all other types of liability policies, including automobile liability insurance policies not defined in § 44-514.

## QUESTION NO. 1

With regard to the first question presented, we note that the question refers to §§ 44-515 to 44-521. Our answer herein is predicated on the fact that the question must be broadened to include § 44-514 because that section sets out, with particularity, the meaning of the word "policy" as used in

§§ 44-515 to 44-521. Pursuant to the terms of § 44-514, the word "policy" is sharply limited to mean only an automobile liability policy (1) providing all or part of coverage for "bodily injury and property damage liability, medical payments, and uninsured motorists coverage," (2) delivered or issued for delivery in Nebraska, (3) insuring a natural person or related persons resident of the same household, and (4) insuring only specified types of vehicles ("private passenger or station wagon type") not used as "a public or livery conveyance for passengers, nor rented to others," or "any other four-wheel motor vehicle of the pickup, panel, or delivery type which is not used in the occupation, profession, or business of the insured." Section 44-514 further specifically provides that §§ 44-514 to 44-521 do not apply to (1) assigned risks coverage, (2) any policy covering more than four automobiles, (3) any policy covering "garage, automobile sales agency, repair shop, service station, or public parking place operation hazards," or (4) any policy issued specifically to cover personal or premises liability of an insured even though such policy provides incidental liability coverage for certain automobile uses.

We have set out herein the details of types of "automobile liability policies" covered by §§ 44-514 to 44-521 to show how limited a class of policies these statutes were designed to cover. Glockel's counsel argue that when the Legislature enacted §§ 44-514 to 44-521, the Legislature intended that the cancellation procedure contained therein should be the sole method of terminating the specific types of automobile liability policies described therein. The provisions also set forth specific reasons for which a policy of the type described in § 44-514 can be canceled. Glockel suggests that, since insurance statutes should be construed liberally in favor of the insured, the cancellation procedure set out in §§ 44-514 to 44-521 must be viewed as the exclusive method of termination.

State Farm's position is that Neb. Rev. Stat. § 44-379.01 (Reissue 1984) also provides a specific method of cancellation of an automobile policy and that § 44-379.01 as well as § 44-358 controls the overall method of cancellation of all insurance policies, including those defined in § 44-514. From consideration of these other statutes (§§ 44-379.01 and 44-358),

State Farm argues in its brief that § 44-516 applies only to cancellation and not to rescission of an automobile liability policy, and defines cancellation as a termination of the policy, while rescission is defined as meaning the avoiding of the insurance policy ab initio. Glockel argues in his brief that an automobile liability policy can only be canceled prospectively pursuant to § 44-516(1) and that after the occurrence of a loss such a policy may not be rescinded. The terms "rescission" and "cancellation" are not defined in any statute, nor is the word rescission used in any of the named statutes.

The great difficulty in answering the certified questions is that we cannot review the matter as an appeal from a specific judgment or ruling of a trial court (in this case the U.S. District Court), but instead we are answering legal questions in the abstract, based on a particular statement of facts forwarded to us by the trial court. Therefore, while the parties brief what seems to be the real issue in the case—that is, When does a purported rescission or cancellation take place?—that question is not submitted to us for answer.

Indeed, the question whether rescission and cancellation signify the same concept or have the same or different meanings under Nebraska law is not submitted on this point. State Farm relies on the statement set forth in 17 G. Couch, Couch Cyclopedia of Insurance Law § 67:35 at 487 (rev. ed. 1983): "The cancellation of an insurance policy is not a rescission, since a rescission avoids the contract ab initio whereas a cancellation merely terminates the policy as of the time when the cancellation becomes effective." On the other hand, Webster's Third New International Dictionary, Unabridged (1968), defines "rescind" as "to take back : ANNUL, CANCEL," id. at 1930, and defines "cancel" as "the act of annulling or rescinding," id. at 325. It is suggested in 12A C.J.S. Cancellation of Inst. § 2 at 644 (1980) that "the terms 'cancellation' and 'rescission' are frequently regarded as being interchangeable." Various jurisdictions take differing positions on the question. Since the question is not submitted to us, we will answer the certified questions assuming that it does not make any difference in our answers which concept is applicable in Nebraska.

Sections 44-514 to 44-521 were the response of Nebraska's Legislature to a growing national concern over arbitrary policy cancellations and nonrenewals. The Legislature was concerned over policyholders' coverage being canceled without the holders being given an opportunity to procure new coverage. This intent is in conformity with the public policy of the state that "[w]hatever length of time a policy has been in effect, a policyholder is not ordinarily expecting to have his coverage canceled." *Saunders v. Mittlieder*, 195 Neb. 232, 236, 237 N.W.2d 838, 840 (1976). The thrust of the Legislature's action was to guarantee that if an insured was to become uninsured, he be apprised of that fact.

As set out above, § 44-514 provides a very narrow definition of "automobile liability policy." Basically, the statute limits the scope of its provisions to private vehicles in noncommercial use. It does not extend to all types of automobile liability insurance. The balance of automobile liability policies are covered by § 44-379.01.

It appears to us that the questions presented seek to determine if an automobile liability insurance policy can be either "canceled," "rescinded," or "terminated" *ab initio*, rather than prospectively. In answering the questions certified to us, it is really of no concern at this point whether the words "rescission" or "cancellation" mean the same or not. Indeed, if defendant's contention is that rescission is the only way to avoid a contract ab initio, then ab initio rescission is *not* available under §§ 44-515 to 44-521 because the term "rescission" is not used in any way in such sections.

We determine that the *exclusive* method of "canceling" an automobile liability policy of the type defined in § 44-514 is set out in §§ 44-515 to 44-521 and that the reasons for such a cancellation are only those set out in the same sections. By their terms, §§ 44-515 and 44-516 govern those policies to which § 44-514 applies, i.e., automobile liability insurance policies of the type defined. Sections 44-514 to 44-521 apply to a specific type of automobile liability policy. Therefore, §§ 44-515 to 44-521 set out the exclusive method or procedures for termination of an automobile liability policy of the type described in § 44-514.

Some confusion arises because § 44-515(2) seems to exclude specifically from its provisions "any policy or coverage which has been in effect less than sixty days at the time notice of cancellation is mailed or delivered by the insurer unless it is a renewal policy." We stated in *Saunders v. Mittlieder, supra* at 236, 237 N.W.2d at 840:

> We conclude the intent of subsection (2) to exclude the effect of section 44-515, R.R.S. 1943, for the first 60 days, was intended solely to give the insurance company a short period for investigation to determine whether or not other reasons might make the risk unacceptable. Subsection (2) relates to the time period provided for cancellation, not to the type of notice required.

Similarly, it is stated in *Conover v. Dairyland Ins. Co.*, 200 Neb. 715, 719, 265 N.W.2d 222, 223 (1978): "We hold that an automobile policy, to which sections 44-516 to 44-521, R.R.S. 1943, apply, issued for less than a 6-month period, is to be considered, for all purposes of said sections, as if written for a period of 6 months."

It is clear that both *Saunders v. Mittlieder, supra*, and *Conover v. Dairyland Ins. Co., supra*, have said that the 60 days referred to in § 44-515(2) sets forth an initial time within which an insurer may check out its insured and decide to cancel the policy for any reason of its own and not be limited to the reasons set out in § 44-515(1). In other words, the method of cancellation must be that set out in § 44-515 to 44-521, but for the first 60 days of the policy the reasons need not be those specified in § 44-515(1).

We therefore hold that the only way to cancel the automobile liability policy represented by Glockel's application, Glockel's premium payment, and State Farm's binder (assuming that the policy is one described in § 44-514) is to follow the procedures set out in §§ 44-515 and 44-516.

This holding is supported both by the original enactment of §§ 44-514 to 44-521 by the enactment of 1972 Neb. Laws, L.B. 1396, and by the amending of both §§ 44-379.01 and 44-516 in the same bill in 1973.

Senator Waldron, the chairman of the Insurance Interim Study Committee, which introduced L.B. 1396, now §§ 44-515

to 44-521, told the committee: "It provides that cancellation can only be made under certain circumstances when a person is insured by a company." Banking, Commerce and Insurance Committee Hearing, L.B. 1396, 82d Leg., 2d Sess. 3 (Feb. 15, 1972).

With regard to the later amending of § 44-516 in L.B. 390 in 1973, the legislative history shows that the bill, as first introduced by Senator Murphy and as read on January 31, 1973, contemplated the complete repeal of § 44-379.01 and the amending of § 44-516. As finally passed by the Legislature on March 12, 1973, and approved by the Governor on March 14, 1973, it amended § 44-379.01 to state that the period of time within which an insurer could cancel a policy for any reason was expanded to 60 days, while the methods of cancellation remained the same. L.B. 390, in § 2, as enacted, specifically amended § 44-516 and kept the two statutes separate and apart, as covering policies for different kinds of automobiles.

It is clear that the Legislature specifically recognized that different kinds of automobile liability policies were covered in the two sections amended. Since both sections refer to automobile liability insurance coverage, the only meaningful reasons for passing two amendments would be that § 44-516 is directed only to policies of the type defined in § 44-514 while § 44-379.01 is directed to all other automobile liability policies. Question 1 is answered Yes.

## QUESTION NO. 2

In answering question 2 we are faced with similar difficulty. In the question the word "cancelled" is underlined, which seems to indicate that canceled means something different than some unexpressed concept. It would be a gratuitous assumption on our part to answer that the parties seek to have us differentiate between cancellation and rescission, so our answer will assume, for purposes of this answer only, that the two terms mean the same.

With that assumption the answer is No, because § 44-515(1) sets out, in part, that a policy (of the type described in § 44-514) can be canceled for "one or more of the following reasons: . . . (b) fraud or material misrepresentation affecting the policy or in the presentation of a claim thereunder, or violation of any of

the terms or conditions of the policy." In addition, an automobile liability policy of the type described in § 44-514 can also be "canceled" for specific reasons other than "material misrepresentation," which additional reasons are set out in § 44-515(1)(a) and (c).

Thus it is clear that such an automobile liability policy can be canceled for a number of reasons stated in the statute, and not only for material misrepresentation. The answer to question 2, as framed, is No.

## QUESTION NO. 3

Proceeding to the third question certified to us, we first note:

It is a well-established rule that special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes so far as there is a conflict. Houser v. School Dist. of South Sioux City, 189 Neb. 323, 202 N.W.2d 621. Where general and special provisions of statutes are in conflict, the general law yields to the special, without regard to priority of dates in enacting the same, and a special law will not be repealed by general provisions unless by express words or necessary implication. Bass v. County of Saline, 171 Neb. 538, 106 N.W.2d 860.

Kibbon v. School Dist. of Omaha, 196 Neb. 293, 298-99, 242 N.W.2d 634, 637 (1976).

Section 44-358 is included in article 3 of chapter 44. Article 3 is entitled "General Provisions Relating to Insurance." It deals with misrepresentation made in application for any type of insurance. Section 44-358 is a general statute. Sections 44-515 to 44-521 deal specifically with automobile liability insurance of the type defined in § 44-514. Such statutes are special statutes. Thus, § 44-358, while generally applicable to all insurance policies, must yield to §§ 44-514 to 44-521 in cases in which the latter conflict with it, and those latter sections completely control both the reasons for, and the method of, cancellation of policies defined in § 44-514.

Defendant also argues that § 44-358 was not repealed by implication by the enactment of §§ 44-514 et seq. Concededly, this is true. Section 44-358 continues to apply in cases where it does not conflict with special statutes.

Therefore, the third question is answered Yes. Section 44-358 is inapplicable to automobile liability policies insofar as it conflicts with §§ 44-514 et seq.

## CONCLUSION

The submitted questions are answered as set out above, and the cause is remanded to the U.S. District Court for the District of Nebraska for further proceedings.

JUDGMENT ENTERED.

CAPORALE, J., participating on briefs.

HASTINGS, J., concurring in the result.

While I concur generally in the majority opinion, I would not wish to leave the impression that the statutes under consideration restrict or dictate the manner in which an insurance company may rescind a policy which was issued as the result of "fraud in the inception"; in other words, where a contract in fact never existed.

BOSLAUGH, J., joins in this concurrence.

CAPORALE, J., concurring in part, and in part dissenting.

I disagree with the majority's affirmative answer to the third question certified, which asks whether Neb. Rev. Stat. § 44-358 (Reissue 1984) is inapplicable to an automobile liability insurance policy.

Section 44-358 was first enacted in 1913 as part of an extensive revision of insurance statutes, and has never been amended, except for grammatical corrections. It reads:

> No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy, or prevent its attaching, unless such misrepresentation or warranty deceived the company to its injury. The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding.

In short, the "contribute to the loss" standard of the statute imposes on an insurer who wishes to defeat or avoid coverage the burden of proving not only that the risk of loss from some

potential cause was increased but also that one of those increased risks actually caused the loss.

In what appears to be the first consideration of the effect of other enactments on § 44-358, this court, in *Zimmerman v. Continental Cas. Co.*, 181 Neb. 654, 150 N.W.2d 268 (1967), held that § 44-358 was a general statute which applied to all insurance policies and must be read in pari materia with the provisions of Neb. Rev. Stat. § 44-710.14 (Reissue 1984), which was adopted in 1957 and applied only to sickness and accident insurance policies. Section 44-710.14 provides that a false statement made in an application will bar recovery only when it materially affects either acceptance of the risk or the hazard assumed. The *Zimmerman* court found no conflict between the two statutes and concluded that a sickness and accident insurer had to meet the requirements of both statutes in order to defeat recovery. *Zimmerman* further held that the older statute, § 44-358, required both that the statements be "made knowingly by the insured with the intent to deceive" and that the insurer be "deceived by them to its injury." *Id.* at 659, 150 N.W.2d at 272. *White v. Medico Life Ins. Co.*, 212 Neb. 901, 327 N.W.2d 606 (1982), applied the *Zimmerman* rule to another sickness and accident policy, and *Farm Bureau Life Ins. Co. v. Luebbe*, 218 Neb. 694, 358 N.W.2d 754 (1984), in determining that a life insurer did not have a basis for defeating coverage, again stated that § 44-358 applied to all policies.

I see nothing in Neb. Rev. Stat. §§ 44-514 through 44-521 (Reissue 1984), inclusive, which conflicts with § 44-358. Those statutes specify particular methods of accomplishing the termination of coverage once extended by certain specified policies, and in some instances further limit the bases upon which coverage may be terminated, as well as limit the effective date of the termination.

Accordingly, I would have answered the third question in the negative, No, § 44-358 is not inapplicable to the policies of automobile liability insurance which come within the purview of §§ 44-514 through 44-521, inclusive; that is to say, § 44-358 is applicable to such policies.

KRIVOSHA, C.J., joins in this concurrence and dissent.