THOMAS H. GLOCKEL, PLAINTIFF, V. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A FOREIGN CORPORATION, DEFENDANT.

400 N.W.2d 250

Filed January 23, 1987.   No. 86-361.

Peter J. Peters, P.C.; Warren C. Schrempp and Peter J. Hoagland; and Wallace Hopkins, P.C., and Steven M. Watson of Marks, Clare, Hopkins, Rauth, Cuddigan, Offner & Watson, for plaintiff.

Joseph K. Meusey and Joseph E. Jones of Fraser, Stryker, Veach, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for defendant.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

This case is before the court a second time on a certification of questions of law from the U.S. District Court for the District of Nebraska, pursuant to Neb. Rev. Stat. §§ 24-219 to 24-225 (Reissue 1985).

In 1985 the following three questions were certified to us:

> 1. Whether the *exclusive* method of terminating an automobile liability insurance policy is controlled by [Neb. Rev. Stat. §§ 44-515 to 44-521 (Reissue 1984)].

> 2. Whether, because of the provisions of [§ 44-515(1)(b)], an automobile liability insurance policy can only be *cancelled* for "material misrepresentations" once a policy of insurance has been issued.

> 3. Whether [Neb. Rev. Stat. § 44-358 (Reissue 1984)] is inapplicable to an automobile liability insurance policy.

(Emphasis in original.) *Glockel v. State Farm Mut. Auto. Ins. Co.*, 219 Neb. 222, 225, 361 N.W.2d 559, 561 (1985) (hereinafter referred to as *Glockel I*).

In *Glockel I, supra*, the first certified question was answered "Yes," and this court stated that "the only way to cancel the automobile liability policy represented by Glockel's application, Glockel's premium payment, and State Farm's binder (assuming that the policy is one described in § 44-514) is to follow the procedures set out in §§ 44-515 and 44-516." 219 Neb. at 229, 361 N.W.2d at 564. Neb. Rev. Stat. § 44-515 (Reissue 1984) limits the grounds for cancellation of policies of the type defined in Neb. Rev. Stat. § 44-514 (Reissue 1984). Among the grounds upon which cancellation may be based is

"fraud or material misrepresentation affecting the policy or in the presentation of a claim thereunder . . . ." § 44-515(1)(b). Neb. Rev. Stat. § 44-516 (Reissue 1984) provides in relevant part: "(1) No notice of cancellation of a policy to which section 44-515 applies shall be effective unless mailed by registered or certified mail to the named insured at least thirty days prior to the effective date of cancellation . . . ."

The second question certified in *Glockel I, supra,* was answered "No" because a § 44-514 type of automobile liability policy can be canceled for reasons other than material misrepresentation, which additional reasons are set out in § 44-515(1)(a) and (c).

The third question certified in *Glockel I, supra,* was answered "Yes"; that is, Neb. Rev. Stat. § 44-358 (Reissue 1984) was held to be inapplicable to automobile liability policies insofar as it conflicts with Neb. Rev. Stat. §§ 44-514 et seq. (Reissue 1984). Section 44-358 provides:

> No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy, or prevent its attaching, unless such misrepresentation or warranty deceived the company to its injury. The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding.

After the U.S. District Court had received a certified copy of our opinion in *Glockel I,* Glockel moved for summary judgment on grounds that State Farm had no right, as a matter of Nebraska law, to rescind or terminate his policy ab initio after the loss. In support of this motion, Glockel relied solely on the answers to the certified questions in *Glockel I, supra.* He interpreted those answers to mean "that an insurer has no right, under the statutes of Nebraska, to rescind a liability binder policy after it is issued."

The U.S. District Court concluded that, while we had determined that §§ 44-515 to 44-521 provided the exclusive

methods for cancellation of this class of automobile liability insurance policies, "the ultimate issue . . . dealing with an insurance carrier's right to rescind a policy was not addressed." This conclusion was based on the fact that the *Glockel I* court had strictly limited itself to answering the certified questions presented and that nowhere in the questions themselves was the term rescission mentioned.

In the memorandum and order, filed December 23, 1985, the district court stated:

> In short, the crucial issue in this action is whether an insurance company has the right to rescind a policy under Nebraska law after an insured has suffered a loss or a third party has been injured by the insured.
>
> This Court's reading of the Nebraska Supreme Court's opinion in Glockel leads it to conclude that the crucial issue in this case was not squarely addressed by the Nebraska court's answers to the certified questions. This was probably due to the framing of the questions, none of which went to the heart of the relevant issue. Due to the limited review that the court has of certified questions, as opposed to reviewing "the matter as an appeal from a specific judgment or ruling of a trial court", Glockel, 219 Neb. at 227, 361 N.W.2d at 563, it appears that the Nebraska Supreme Court chose not to stray from the questions presented. The crucial question, therefore, was never answered by the court.
>
> This conclusion is supported by statements made by the court in the Glockel opinion. The court noted: "While the parties brief what seems to be the real issue in the case - that is, when does a purported rescission or cancellation take place? - that question is not submitted to us for answer. . . . Indeed, the question whether rescission and cancellation signify the same concept or have the same or different meanings under Nebraska law is not submitted on this point. * * * Various jurisdictions take differing positions on the question. Since the question is not submitted to us, we will answer the certified questions assuming that it does not make any difference in our answers which concept is applicable in Nebraska." Id. at

227, 361 N.W.2d at 563. The court also noted the ambiguity of the second question posed problems in the formulation of an answer, when it stated: In the [second] question the word "cancelled" is underlined, which seems to indicate that canceled means something different than some unexpressed concept. It would be a gratuitous assumption on our part to answer that the parties seek to have us differentiate between cancellation and rescission, so our answer will assume, for purposes of this answer only, that the two terms mean the same. Id. at 230, 361 N.W.2d at 564.

Looking at the certified questions themselves, nowhere is the term "rescission" mentioned. Rather, the questions revolve around the Nebraska statutes governing automobile insurance policies and their respective cancellation requirements. The Nebraska Supreme Court noted that the exclusive methods for cancellation of an automobile liability insurance policy are set forth in Neb.Rev.Stat. Sections 44-515 to 44-521 (Reissue 1984), however, the ultimate issue in this case dealing with an insurance carrier's right to rescind a policy was not addressed.

The Nebraska Supreme Court's reluctance to distinguish between "cancel" or "rescind" is evident when it stated: It appears to us that the questions presented seek to determine if an automobile liability insurance policy can be either "canceled," "rescinded," or "terminated" ab initio, rather than prospectively. In answering the questions certified to us, it is really of no concern at this point whether the words "rescission" or "cancellation" mean the same or not. Indeed, if defendant's contention is that recission [sic] is the only way to avoid a contract ab initio, then ab initio rescission is not available under Sections 44-515 to 44-521 because the term "rescission" is not used in any way in such sections. 219 Neb. at 228, 361 N.W.2d at 563.

The district court determined that *Glockel I, supra,* clearly held that an insurance carrier could not rescind a policy ab initio under §§ 44-515 to 44-521. Nevertheless, the district court

concluded that *Glockel I* did not indicate "whether an insurance carrier can 'rescind' a policy ab initio in a manner other than that dictated by statute, such as a common law right advocated by State Farm." The district court overruled Glockel's motion for summary judgment because the *Glockel I* opinion failed to address the question as to whether there is a right to rescind an insurance policy ab initio after a loss.

On April 24, 1986, State Farm's motion to certify additional questions of law to this court was sustained. The certified questions that have been submitted to us are:

1. Assuming Glockel's Application for a [Neb. Rev. Stat. § 44-514 (Reissue 1984)] type of automobile liability insurance policy was fraudulent, did State Farm have the right to declare its binder void from its inception under Nebraska statutory law or common law or both.

2. Did the right exist even though a loss occurred which caused damage to.Leon J. Skank, who is not a party to the insurance contract.

In answering these questions we are required to assume the following facts are true:

"Plaintiff, Thomas H. Glockel (hereinafter referred to as Glockel), applied to defendant, State Farm Mutual Automobile Insurance Company (hereinafter referred to as State Farm), for an automobile liability insurance policy on April 29, 1980. Glockel signed the application and paid $54.98 for the first 2 months' coverage. In his application, Glockel listed one traffic violation, a stop sign infraction in October of 1979. State Farm's agent bound coverage on April 29, 1980, and, on or about the same day, forwarded the application to State Farm's regional office in Lincoln, Nebraska. The policy was issued to Glockel and his father.

Four days later, on May 3rd, 1980, Glockel was involved in an automobile accident that caused extremely serious injuries to one Leon Skank. At some point, the Lincoln underwriting office discovered that Glockel's Nebraska motor vehicle record revealed two traffic violations instead of just one. On May 7, 1980, Glockel gave a recorded statement to a State Farm investigator

admitting that he had received "two or three" speeding tickets in Council Bluffs, Iowa between June and August of 1979. State Farm thereafter convened a "claim committee" to evaluate the status of Glockel's policy. The claim committee determined that Glockel had made a material misrepresentation concerning his driving record. In a June 9, 1980, letter addressed to plaintiff, Glockel and his father, State Farm advised that, because of Thomas Glockel's misrepresentations, it was rescinding the binder of insurance and declaring it void at its inception. State Farm also returned Glockel's $54.98 premium payment.

Kandis K. Skank, as Conservator for her husband, Leon, filed suit in the District Court of Douglas County, Nebraska, against Thomas Glockel alleging negligence in the May 3, 1980 operation of his motor vehicle. Her attorneys sent written offers to Glockel's attorneys to settle the lawsuit for the $15,000 limit of Glockel's policy. Glockel's attorney communicated the offers to State Farm and demanded settlement. State Farm rejected the offers and refused to settle on the basis of its June 9, 1980 letter of rescission. The jury returned a verdict against Thomas Glockel substantially in excess of the policy limits.

Glockel's complaint in the United States District Court alleges negligence and bad faith by State Farm for refusing to settle the underlying lawsuit within the $15,000 policy limit. Mr. Glockel seeks a judgment against State Farm for the $15,000 insurance coverage and the amount by which the state court judgment exceeds the policy limit, plus interest and attorneys' fees. He further requests damages for mental and emotional distress, unfavorable publicity, and injury to his credit and reputation. State Farm, by affirmative defense, alleges that Glockel misrepresented material facts regarding his driving record in his application for insurance and that, under Nebraska law, State Farm may therefore rescind the policy and declare it void ab initio."

## QUESTION NO. 1

A careful review of the applicable statutes, legislative history, Glockel I, supra, and related case law demonstrates that the

answer to question 1 is Yes, State Farm did have the right to declare its binder void from its inception under both Nebraska statutory and common law.

At first glance, the answer to the first certified question in *Glockel I* suggests a contrary result. But in holding that §§ 44-515 to 44-521 provided the exclusive method of terminating an automobile liability insurance policy, we made no attempt to distinguish between the concepts of cancellation, termination, or rescission.

In 17 G. Couch, Couch Cyclopedia of Insurance Law § 67:35 at 487 (rev. ed. 1983), the text states that "[t]he cancellation of an insurance policy is not a rescission, since a rescission avoids the contract ab initio whereas a cancellation merely terminates the policy as of the time when the cancellation becomes effective."

In *Gov't Employees Ins. Co. v. Chavis*, 254 S.C. 507, 516, 176 S.E.2d 131, 135 (1970), the Supreme Court of South Carolina wrote that

> cancellation refers to the termination of the policy prior to the end of the policy period, and termination refers to the expiration of policy by the lapse of the policy period. Rescission is not merely a termination of contractual obligation but is abrogation or undoing of it from the beginning, which seeks to create a situation the same as if no contract ever had existed. [Citation omitted.] The cancellation of a liability insurance policy operates prospectively and is to be distinguished from rescission which destroys the policy *ab initio*. In the case of *Ray v. Beneficial Finance Co.*, 92 N. J. Super. 519, 224 A. (2d) 143, it was held that "rescission" contemplates return to *status quo ante*.

See, also, *United Security v Ins Comm'r*, 133 Mich. App. 38, 348 N.W.2d 34 (1984).

Section 44-358, while not expressly using the term rescission, has been interpreted by this court to recognize the right to avoid a policy under certain circumstances in the case of material misrepresentations by an insured. See, *White v. Medico Life Ins. Co.*, 212 Neb. 901, 327 N.W.2d 606 (1982); *MFA Mut. Ins. Co. v. Meisinger*, 183 Neb. 285, 159 N.W.2d 829 (1968). The

remedy in the former case was in the nature of rescission because the successful insurer avoided liability on the policy as if it had never existed.

In other cases, this court has recognized the right to void or rescind an automobile liability policy ab initio for material misrepresentations, without express reference to § 44-358. *Dairyland Ins. Co. v. Kammerer*, 213 Neb. 108, 327 N.W.2d 618 (1982); *Reserve Ins. Co. v. Aguilera*, 181 Neb. 605, 150 N.W.2d 114 (1967).

In the *Kammerer* case, the insurer attempted to rescind the policy for fraud in the application, but failed to return the entire premium it had received. In that case we said:

> When learning of the alleged fraud, Auto-Owners had two choices. Either it could determine that, because of the alleged fraudulent statements made to it, it wished to cancel the policy from its inception and return to Popish the entire premium, on the theory that the policy never came into existence, or it could waive the alleged fraud, keep the premium earned to date of cancellation, and accept responsibility under the policy. If Auto-Owners elected to rescind the policy from its inception, it must place Popish back in the same position Popish was in before the policy was issued, including returning to her all of the premium. But Auto-Owners chose not to do so. Both by its notice of cancellation and by its retention of a portion of the premium, Auto-Owners elected to recognize the existence of the policy from the date of its issuance on March 5, 1980, until the date of its declared cancellation on April 22, 1980. Having made that choice, Auto-Owners acknowledged that the policy was in effect on the date of the accident, March 27, 1980, and it therefore became liable under the policy. Auto-Owners could not, on the one hand, recognize the existence of the policy and retain a portion of the premium and, on the other hand, deny the coverage afforded by the policy because of alleged fraudulent misrepresentations.

213 Neb. at 110-11, 327 N.W.2d at 620.

The use of the word "cancel" in the second sentence of the paragraph quoted above was unfortunate. The proper term was

rescind. However, the meaning is clear from the context and any possible confusion as to the meaning may be eliminated by substituting the word "rescind" for the word "cancel" in the second sentence of the paragraph quoted.

While these cases suggest a common-law right to rescission, that right appears to be subject to the limitations imposed by § 44-358. See *Zimmerman v. Continental Cas. Co.*, 181 Neb. 654, 150 N.W.2d 268 (1967) (setting out interpretation of requirements of § 44-358). Perhaps it is most accurate to state that in Nebraska there is a common-law right to rescind or avoid insurance policies for material misrepresentations, which is recognized in and limited by § 44-358.

In a recent case involving an insurer's attempt to rescind an automobile insurance binder on grounds of material misrepresentation, the Michigan Court of Appeals rejected the argument that the subsequent enactment of a statute controlling cancellation of such policies implied an intent to preclude rescission ab initio. *United Security v Ins Comm'r*, 133 Mich. App. 38, 348 N.W.2d 34 (1984). The court noted: "Rescission is insufficiently similar to cancellation to support the conclusion that the Legislature's enactment of a statute controlling cancellation of an automobile insurance policy without mentioning rescission demonstrates the Legislature's intent to preclude rescission." *Id*. at 42, 348 N.W.2d at 35.

Recognizing the distinctions between the remedies, it cannot be said that a statute controlling the methods of and reasons for cancellation or termination of an automobile liability policy precludes rescission.

The answer to the third certified question in *Glockel I*, however, also seems to suggest that there is no longer a right to rescission in a case such as this. The answer was based on the fact that § 44-358 is a general statute while §§ 44-514 et seq. are special provisions relating to a particular subject. *Glockel I, supra*. Such special provisions are usually interpreted to prevail over general ones to the extent they conflict. *Glockel I, supra*. Consistent with this rule of statutory construction, the court held that "[s]ection 44-358 is inapplicable to automobile liability policies insofar as it conflicts with §§ 44-514 et seq." *Glockel I*, 219 Neb. 222, 232, 361 N.W.2d 559, 565 (1985). We

did not, however, indicate the extent, if any, of the conflict between the two provisions.

In *SID No. 1 v. County of Adams*, 209 Neb. 108, 306 N.W.2d 584 (1981), this court indicated that where a general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act is considered an exception to the general statute.

In the present case, the provisions in question relate to different matters: cancellation or termination, on the one hand, and rescission, on the other. As such, the provisions do not conflict.

Unless a cancellation statute is

> manifestly all-inclusive, it is held that a statute in specifying the instances under which a party to an insurance contract may cancel it does not make such cancellation the exclusive remedy, and it is not in derogation of other remedial rights which are recognized and implemented by other provisions of law.

17 G. Couch, Couch Cyclopedia of Insurance Law § 67:54 at 500-01 (rev. ed. 1983).

A review of the legislative history of §§ 44-514 to 44-521 shows that cancellation was not intended to be the exclusive remedy for material misrepresentations made by an insured, but that the reasons for and the methods of cancellation were meant to be limited by the relevant provisions. The statement of purpose as to the bill later enacted as §§ 44-514 et seq. indicates that "LB 1396 is an act relating to automobile liability insurance. It prescribes the conditions for cancellation and nonrenewal of liability coverages, provides for written notice of such cancellation or nonrenewal, and defines certain pertinent terms." Statement of Purpose, L.B. 1396, Banking, Commerce and Insurance Committee, 82d Leg., 2d Sess. (Feb. 2, 1972). Nowhere in the legislative history or statutes themselves is there language mentioning rescission or avoidance nor indicating that those remedies were to be eliminated by enactment of the statutory cancellation scheme. Instead, the purpose of the statutes was to ensure that notice is given when cancellation is the remedy utilized and to limit the circumstances under which cancellation may be had. Banking, Commerce and Insurance

Committee Hearing, L.B. 1396, 82d Leg., 2d Sess. (Feb. 15, 1972). See, generally, *Glockel I, supra.*

In light of these facts, it is evident that § 44-358 and §§ 44-514 to 44-521 relate to different matters and are therefore not in conflict. As such, the right to rescission as limited by § 44-358 is still available to an insurer regarding policies of the type defined in § 44-514.

## QUESTION NO. 2

The answer to question 2 is Yes, the right to rescind did exist even though a loss occurred which caused damage to Leon Skank, who was not a party to the insurance contract.

The only Nebraska case which appears to have directly touched on this issue is *Reserve Ins. Co. v. Aguilera,* 181 Neb. 605, 150 N.W.2d 114 (1967). That case arose prior to the enactment of the cancellation statutes embodied in §§ 44-514 to 44-521. In *Aguilera,* the plaintiff insurance company sought a judicial determination that an automobile liability policy issued to the defendant insured was void ab initio because it was obtained by misrepresentation in the application for the policy. The action arose after the insured was involved in an automobile accident which resulted in the death of a third party, whose widow was an intervenor in the case. One of the contentions on appeal from the judgment for the insurer was that under Neb. Rev. Stat. § 60-538 (Reissue 1984) of the Motor Vehicle Safety Responsibility Act, the liability of the insurer became absolute when the accident occurred. That statutory provision provided then, as it does now:

> (1) The liability of the insurance carrier with respect to the insurance required by sections 60-501 to 60-569 shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs . . . no statement made by the insured or on his behalf . . . shall defeat or void said policy . . . .

§ 60-538.

In affirming the judgment this court determined that "[t]he first accident is not within the purview of the Motor Vehicle Safety Responsibility Act, nor does the act have any application to an insurance policy which has not been used as proof of financial responsibility in the future." *Aguilera, supra* at 607,

150 N.W.2d at 117.

A survey of the case law in other jurisdictions reveals a division of authority as to whether an injury to a third party eliminates the insurer's right to rescind the policy on the basis of material misrepresentations by the insured.

In the cases holding that the right to rescind is cut off by injury to a third party, the courts have generally recognized some underlying policy in their respective insurance statutes which aims to protect the rights of the innocent third-party victims of automobile accidents. In several of the cases the insurer's liability was determined on the basis of whether the policy was or should have been issued in accordance with a financial responsibility law. *Century Indemnity Co. v. Simon*, 77 F. Supp. 221 (D.N.J. 1948) (insurer liable to third party, but not insured, because policy was issued under New Jersey's financial responsibility law and beneficiaries of the law are the members of the public who may be injured in motor accidents); *Richard v. Fliflet*, 370 N.W.2d 528 (N.D. 1985) (insurer could not rescind policy after injury to third party, where the insurance policy, although voluntary, was purchased to avoid sanctions of financial responsibility law and purpose of law is to protect innocent victims of automobile accidents from financial disaster); *Nationwide Mut. Ins. Co. v. Conley*, 156 W. Va. 391, 194 S.E.2d 170 (1972) (insurer not liable to insured or injured third party because policy was issued voluntarily and not under the compulsion of an assigned risk or financial responsibility law); *Safeco v. Gonacha*, 142 Colo. 170, 350 P.2d 189 (1960) (insurer not liable to insured or injured third parties where policy was a voluntary as opposed to a mandatory one as required by financial responsibility law, and where Colorado had no compulsory insurance law); *Mollihan v. Stephany*, 52 Ill. App. 3d 1034, 368 N.E.2d 465 (1977) (insurer not liable to injured third party because policy not subject to financial responsibility law making liability absolute after loss, when policy not certified as required by act); *State Farm Mut. Auto. Ins. Co. v. Wall*, 92 N.J. Super. 92, 222 A.2d 282 (1966) (insurer liable to third parties although policy not certified under financial responsibility law, but where director could have demanded such proof).

In other cases the courts have recognized a policy protecting third party rights in the state's overall statutory insurance scheme, compulsory insurance requirements, or statutes precluding certain exclusions in automobile insurance policies. *State Farm Ins v Kurylowicz*, 67 Mich. App. 568, 242 N.W.2d 530 (1976) (court indicated that it was questionable whether an automobile liability policy could ever be rescinded ab initio after accident, in light of legislative enactments which, when read in pari materia, suggested policy that persons suffering loss in traffic accidents have a source of recovery); *Allstate Insurance Co. v. Sullam*, 76 Misc. 2d 87, 349 N.Y.S.2d 550 (1973) (no rescission as to compulsory insurance policy after injury to third party, because purpose of compulsory insurance is to protect travelers on roadways by providing compensation for injury resulting from automobile accident); *Rauch v. American Fam. Ins. Co.*, 115 Wis. 2d 257, 340 N.W.2d 478 (1983) (insurer liable to third party despite insured's misrepresentations, because driver of insured's car at time of accident was member of class precluded by statute from being excluded from coverage under policy; since purpose of statute was to protect innocent third parties, purpose would be frustrated if such third parties were denied compensation because of insured's misrepresentations).

Yet, others have denied third-party recovery on the basis of misrepresentations by the insured without mention of any underlying statutory policy. *Gov't Employees Ins. Co. v. Chavis*, 254 S.C. 507, 176 S.E.2d 131 (1970); *Sentry Indemnity Co. v. Brady*, 153 Ga. App. 168, 264 S.E.2d 702 (1980); *State Farm Mut. Auto. Ins. Co. v. Price*, 181 Ind. App. 258, 396 N.E.2d 134 (1979); *Miller v. Plains Insurance Company*, 409 S.W.2d 770 (Mo. App. 1966).

Nebraska has recently enacted legislation making automobile liability insurance compulsory. See Neb. Rev. Stat. §§ 60-302 (Supp. 1985) and 60-570 (Cum. Supp. 1986).

These enactments might be said to support the argument that Nebraska's statutes evidence a policy of protecting the innocent victims of automobile accidents from financial ruin. However, these provisions did not become operative until January 1, 1986, and, thus, were not in force when the policy in question

was issued nor when the loss occurred. The statutes may not be read retroactively in violation of vested rights under the policy. See *Farm Bureau Ins. Co. v. Adams*, 145 Ind. App. 516, 251 N.E.2d 696 (1969) (cancellation statute may not be interpreted retroactively in violation of vested rights in policy's cancellation clause, which permitted cancellation without reason).

Glockel argues that the policy behind the cancellation statutes, §§ 44-514 to 44-521, requires that the insurer not be permitted to rescind the policy, at least as to an injured third party. Clearly, the policy behind those sections is to provide the insured with notice of cancellation, when that is the remedy utilized by an insurer. *Glockel I.*

It is also clear, however, that this was a "voluntary" policy of insurance which was not issued under the financial responsibility law, a compulsory insurance law, nor an assigned risk plan. Under the Nebraska insurance statutes in effect at the time of the policy's issuance, State Farm's right to rescind was not cut off by injury to a third party.

Although the Nebraska automobile insurance statutes do evidence a policy of seeking to protect the innocent victims of automobile accidents, this policy is not of sufficient magnitude to override an insurer's rescission rights, unless the policy is issued pursuant to a statute enacted to protect such third-party rights. *Reserve Ins. Co. v. Aguilera*, 181 Neb. 605, 150 N.W.2d 114 (1967). Since the policy in the present case was not issued pursuant to such a provision, State Farm retained its right to rescission on the ground of material misrepresentations by the insured.

JUDGMENT ENTERED.