FARMERS & MERCHANTS INSURANCE COMPANY V. SARAH R. BODGE.*

FILED FEBRUARY 22, 1906. No. 14,151.

Insurance Policy: BREACH: WAIVER. A policy of tornado insurance, containing a provision that if the buildings insured be or become vacant or unoccupied the policy shall be null and void, does not become absolutely void upon a violation of such condition, unless the insurer chooses to take advantage of the forfeiture; and where, after loss under such a policy, the company issuing the same, being informed of the loss as well as the breach of condition, cancels the policy and retains the premium up to and including the time of the loss, it will be held to be a waiver of the breach of condition.

*Rehearing allowed. See opinion, p. 35, *post.*

ERROR to the district court for Buffalo county: BRUNO
O. HOSTETLER, JUDGE. *Affirmed.*

*Halleck F. Rose,* for plaintiff in error.

*E. C. & H. V. Calkins, contra.*

JACKSON, C.

Plaintiff in error issued an insurance policy to the de-
fendant in error, providing for indemnity in case of loss
occasioned by winds, cyclones or tornadoes. The policy
contained these stipulations:

"It is agreed that if the assured shall have, or hereafter
accept, any other insurance on the above mentioned prop-
erty, whether valid or not, or if the above mentioned
buildings be or become vacant or unoccupied, or be used
for any other purpose than that mentioned in said appli-
cation, without consent indorsed hereon,   *   *   *   in
each and every one of the above cases, this policy shall
be null and void. Nor will this company be liable for any
cyclone, tornado, or windstorm loss or damage on build-
ings in course of erection unless fully inclosed, nor for
buildings or their contents, except said buildings rest on
good and substantial foundations, securely inclosed so as
not to admit of an unnecessary current of wind circu-
lating through or under them, nor for buildings or their
contents covered, in whole or in part, with hay, straw,
thatched or board roof, nor for the blowing down of de-
fective chimneys, loose clapboards, shingles or window
blinds."

The form of the policy admits of its use for either fire
and lightning, or tornado insurance, or both. The build-
ings insured by the policy were at the time the policy was
issued occupied by a tenant, who afterwards vacated the
premises, and while they were vacant one of the buildings
was damaged by a windstorm, and thereupon the assured
made proof and submitted to the company a proposition

for arbitration, according to one of the provisions of the policy. Upon receipt of the proof the company sent the following communication to the assured:

"Lincoln, Neb., April 19, 1904.   Sarah R. Bodge, Kearney, Nebraska. Dear Madam: We received a notice from S. S. St. John of a claim purporting to have been made by you on property covered by policy No. 101,634, having been alleged to have been occasioned by wind. We sent a representative of this company to investigate the matter, and upon arriving he found the place vacated, no one living in the house, barn or on the premises, and from inquiry from the neighbors he learned that no one had been living there since last February. You are aware that such vacancy is in direct violation of the conditions of your policy, and no company without special permission ever intends to cover such a risk. In addition, our representative ascertained that the property was in poor condition and in most places uninsurable. Repairs had long been needed, but nothing seems to have been attended to. We are inclosing you a draft for $6.35, which is the unearned part of the premium on your policies, $3.10, $3,25, and desire to cancel same immediately. Upon receipt of this, kindly forward the policy, and oblige, Yours truly, L. P. Funkhouser, Secretary. Cancelation of policies, 101,634, 3.10; 99,630, 3.25."

Action was instituted on the policy, resulting in a judgment favorable to the assured, from which the company prosecutes error.

It is sought to sustain the judgment of the trial court on three grounds: First, because the provision in the policy avoiding the insurance in the event the buildings were or should become vacant applies only to insurance against fire, and was not, within the contemplation of the parties, intended to apply to tornado insurance; second, if it was intended to apply to tornado insurance, that it is immaterial, because the vacation of the buildings does not increase the hazard as a tornado risk; and, third, if it was, within the contemplation of the parties, intended to apply to tornado insurance and is material, that it was waived

when the company, upon the cancelation of the policy, retained the premium up to and including the time of the loss. If the defendant in error is correct as to the latter contention then it becomes unnecessary to examine the former. In *Home Fire Ins. Co. v. Kuhlman,* 58 Neb. 488, it was held that a fire insurance policy, providing that it should be void if the buildings be or become vacant or unoccupied, does not upon a violation of such condition become absolutely void, unless the insurer chooses to take advantage of the forfeiture; and where an insurance company, after loss and upon being informed of a breach of a condition in its policy providing for forfeiture, canceled the policy but retained the premium beyond the date of breach of the condition and up to and including the date of the loss, such action on the part of the company amounted to an estoppel and should be held to be a waiver of the breach of condition. The total amount of insurance provided by the policy in suit is $500; the total premium paid was $5; the policy was dated May 17, 1902, and would expire by its terms May, 17, 1907. It appears from the evidence that prior to the loss now in litigation the assured had sustained a loss upon which payment had been made by the insurance company. The only evidence on that branch of the case is the testimony of one witness, as follows: "Q. Do you know whether or not Mrs. Bodge received for another windstorm loss under this policy $25? A. Well, I ain't sure it was exactly $25, it was pretty near that, I think. Q. Do you remember about when that was paid? A. I should think it was 15 months ago, something like that. Q. It was a windstorm loss paid on this same identical policy? A. Yes, I think it applied—— Q. On the house? A. On the granary, might have been partly on the granary and partly on the barn. It wasn't much over $20, I don't think, of course, I couldn't remember the exact amount." The company had earned the full premium on any amount of loss paid under the provisions of the policy, and the policy would be in force for the balance of the term only upon the difference between the amount so

paid and the face of the policy. If the amount of loss paid by the company was $20, then the policy was in force for $480; if the amount paid was $25, then the policy was continued in force for $475. The amount of unearned premium returned was $3.10. On April 19, 1904, the date when the premium was so returned, computing the loss previously paid by the company at $20, it had earned of the premium paid by the insured $1.89, leaving the amount of unearned premium $3.11. The loss now in litigation occurred on the 8th day of April, 1904. The trial court doubtless found that the amount of premium retained by the company was sufficient to carry the policy beyond the date of the loss, and such finding is not without support in the evidence, although the amount of prior loss paid exceeded the sum of $20, and applying the rule of *Home Fire Ins. Co. v. Kuhlman, supra,* we find that the retention of such premium under the circumstances amounted to a waiver of the breach of the conditions of the policy, and we recommend that the judgment be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed February 8, 1907. *Former judgment of affirmance vacated and judgment of district court reversed:*

1. Insurance Contract: CONSTRUCTION. A stipulation in a contract for tornado, cyclone and windstorm insurance that the policy shall be void in case the buildings insured become vacant is material to the hazard and will be enforced.

2. ———: WAIVER. The cancelation of a policy of insurance after loss and notice of facts occurring before loss constituting a forfeiture, coupled with the return of unearned premium from date of forfeiture, does not constitute a waiver of the forfeiture.

JACKSON, C.

A former opinion in this case is reported, *ante,* p. 31. Our conclusion was there put upon the ground that the

insurance company had waived a forfeiture of the policy by an attempted cancelation after notice of loss, and retaining the premium up to and including the time of loss. A rehearing has been allowed and we find from further consideration that, owing to a mistaken method of calculating the unearned premium, we were in error in holding that the insurance company retained the premium to cover the period of the loss. The case must therefore stand upon the other questions presented on behalf of the plaintiff in error. It appears that after notice of loss the company sent a representative to make an investigation, and after receiving his report wrote the assured the following letter:

"Lincoln, Neb., April 19, 1904. Sarah R. Bodge, Kearney, Nebraska. Dear Madam: We received a notice from S. S. St. John of a claim purporting to have been made by you on property covered by policy No. 101,634, having been alleged to have been occasioned by wind. We sent a representative of this company to investigate the matter, and upon arriving he found the place vacated, no one living in the house, barn or on the premises, and from inquiry from the neighbors he learned that no one had been living there since last February. You are aware that such vacancy is in direct violation of the conditions of your policy, and no company without special permission ever intends to cover such a risk. In addition, our representative ascertained that the property was in poor condition and in most places uninsurable. Repairs had long been needed, but nothing seems to have been attended to. We are inclosing you a draft for $6.35, which is the unearned part of the premium on your policies, $3.10, $3.25, and desire to cancel same immediately. Upon receipt of this kindly forward the policy, and oblige, Yours truly,

"L. P. Funkhouser, Secretary.

"Cancelation of policies 101,634, 3.10; 99,630, 325."

It is insisted on behalf of the defendant in error that this letter amounts to a waiver of the forfeiture provisions of the policy, and we are cited to the case of *Home Fire*

*Ins. Co. v. Kuhlman,* 58 Neb. 488, in support of this contention.   Some of the language employed in the opinion would seem to sustain the position of the defendant in error, but a careful reading of the entire opinion has convinced us that the decision was grounded upon the fact that the insurance company in that case, after notice of loss, undertook to cancel the policy, and in so doing retained the premium up to a time after the loss occurred, a state of facts altogether different from those here presented.   The contract involved covers loss by cyclones, tornadoes and windstorms; the policy is written on what is termed a combination form that might be used either for fire and lightning, or cyclone, tornado and windstorm insurance, or for all.   The stipulations of the policy, in so far as they are important to the determination of the case, are as follows:

"And it is agreed that if the assured shall have, or hereafter accept, any other insurance on the above mentioned property, whether valid or not, or if the above mentioned buildings be or become vacant or unoccupied, or be used for any other purpose than that mentioned in said application, without consent indorsed hereon, or if the property be or shall hereafter become mortgaged or incumbered, or if the same be or hereafter become involved in litigation, or upon the commencement of foreclosure proceedings, or in case any change shall take place in the title, possession, or interest of the assured in the above mentioned property, or if this policy shall be assigned, or if the risk be increased in any manner, except by the erection of additions and repairs to dwelling and of ordinary out-buildings, without consent indorsed hereon, then, in each and every one of the above cases, this policy shall be null and void. Nor will this company be liable for any cyclone, tornado, or windstorm loss or damage on buildings in course of erection except fully inclosed, nor for buildings or their contents, except said buildings rest on good and substantial foundations, securely inclosed so as not to admit of an unnecessary current of wind circulating through or under them, nor for buildings or their contents covered,

in whole or in part, with hay, straw, thatched or board roof, nor for the blowing down of defective chimneys, loose clap-boards, shingles, or window blinds."

It will be observed that some of these provisions are general and others limited in their application, and it is argued on behalf of the defendant in error that only such provisions as are limited to cyclone, tornado and windstorm insurance apply to that class of insurance. We cannot, however, so construe the contract. It is plain that the special provisions quoted as applicable to tornado, cyclone and windstorm insurance were intended as additional conditions to those that are general in terms. We do not wish to be understood as saying that a disregard of any one of the general provisions would work a forfeiture of windstorm or cyclone insurance, but we should give effect to those stipulations which are material to the risk. At the time the policy in suit was issued the buildings covered by the insurance were occupied by a tenant; they later became vacant and were vacant at the time of the loss. The question as to whether the vacancy of the buildings increased the hazard is the vital question in the case, and we think it did. In *Sexton v. Hawkeye Ins. Co.,* 69 Ia. 99, and *Republic County M. F. Ins. Co. v. Johnson,* 69 Kan. 146, 76 Pac. 419, the identical question was involved, and in each case it was held that the stipulation against vacancy was material. They are both well-reasoned cases and we are satisfied that the conclusion reached is correct.

The plaintiff had judgment, from which the insurance company prosecuted error. Giving effect to the stipulation against vacancy contained in the contract, the judgment was erroneous, and we recommend that our former opinion be vacated, the judgment of the district court reversed and the cause remanded.

DUFFIE, C., concurs.

By the Court: For the reasons stated in the foregoing

opinion, the former judgment in this cause is vacated, the judgment of the district court reversed and the cause remanded.

REVERSED.