DAIRYLAND INSURANCE COMPANY, RICHARD A. WRICH, AND JUDITH C. POPISH, APPELLANTS, v. DIANA K. KAMMERER, MATTHEW B. KAMMERER, AUTO-OWNERS INSURANCE COMPANY, AND ALLSTATE INSURANCE COMPANY, APPELLEES.

327 N.W.2d 618

Filed December 17, 1982. No. 44505.

John J. Respeliers of Respeliers and DiMari, for appellants.

Eugene P. Welch of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellee Auto-Owners.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

The instant appeal grows out of a suit instituted principally by the appellant Dairyland Insurance Company seeking to have the trial court find that a certain insurance policy, issued by the appellee Auto-Owners Insurance Company, provided primary coverage for an accident which occurred on March 27, 1980. The trial court found that because the principal insured, Judith C. Popish, had fraudulently failed to disclose to Auto-Owners the fact that Richard A. Wrich was a member of her household at the time the insurance was issued, the policy of insurance issued by Auto-Owners provided no coverage to Wrich as driver of Popish's car when involved in the accident of March 27, 1980. For reasons more particularly set out in the opinion, we believe that the trial court was in error and therefore reverse and remand the decision with directions.

The record discloses that on March 5, 1980, Auto-Owners, through one of its authorized agents, issued a binder to Popish covering a certain 1974 MGB convertible owned by Popish. On March 27, 1980, Wrich, with permission of Popish, was operating her insured automobile and was involved in an accident with another automobile, allegedly injuring Diana K. Kammerer. On April 10, 1980, Auto-Owners sent to Popish a notice of cancellation, advising her that

the company would cancel the policy effective 12:01 a.m. on April 22, 1980. This, of course, was almost a month after the accident occurred. The reason given in the notice of cancellation was "UNDER-WRITING REASONS." Consistent with the company's position concerning the date upon which the cancellation was to be effective, the company returned only a portion of the total premium paid by Popish to Auto-Owners, which was equal to the premium collected for the period after the date of cancellation. The record is devoid of any evidence that Auto-Owners has returned to Popish anything more than the initial refund.

In its answer to the petition filed by Dairyland, Auto-Owners maintained that the policy was void ab initio because Popish had failed to disclose to the company the fact that Wrich resided in the home owned by Popish and was therefore a "member of her household." The trial court agreed with Auto-Owners and found specifically that Popish's failure to advise Auto-Owners that Wrich was a member of her household was a material misrepresentation which entitled Auto-Owners to avoid coverage of Wrich under the policy. Because of the action taken by Auto-Owners in attempting to cancel the policy, we need not reach the question of Popish's alleged fraud.

Under the terms of the policy issued by Auto-Owners, when, on March 27, 1980, Wrich operated Popish's motor vehicle with her permission, he was an "insured." The policy specifically defined the insured to be "the named insured and any person using the automobile . . . with the permission of the named insured . . . ." The policy clearly provided coverage for both Popish and Wrich, unless, on March 27, 1980, the policy was not at all in effect.

When learning of the alleged fraud, Auto-Owners had two choices. Either it could determine that, because of the alleged fraudulent statements made to it, it wished to cancel the policy from its inception

and return to Popish the entire premium, on the theory that the policy never came into existence, or it could waive the alleged fraud, keep the premium earned to date of cancellation, and accept responsibility under the policy. If Auto-Owners elected to rescind the policy from its inception, it must place Popish back in the same position Popish was in before the policy was issued, including returning to her all of the premium. But Auto-Owners chose not to do so. Both by its notice of cancellation and by its retention of a portion of the premium, Auto-Owners elected to recognize the existence of the policy from the date of its issuance on March 5, 1980, until the date of its declared cancellation on April 22, 1980. Having made that choice, Auto-Owners acknowledged that the policy was in effect on the date of the accident, March 27, 1980, and it therefore became liable under the policy. Auto-Owners could not, on the one hand, recognize the existence of the policy and retain a portion of the premium and, on the other hand, deny the coverage afforded by the policy because of alleged fraudulent misrepresentations.

In 45 C.J.S. *Insurance* § 716 at 696-97 (1946), the author notes: "Insurer is precluded from asserting a forfeiture where, after acquiring knowledge of the facts constituting a breach of condition, it has retained the unearned portion of the premium or has failed to return or tender it back with reasonable promptness, especially where the nature of the breach or ground for forfeiture is of such character as to render the policy void from its inception . . . ." See, also, *Hawkeye Casualty Co. v. Stoker,* 154 Neb. 466, 48 N.W.2d 623 (1951); *Farmers & Merchants Ins. Co. v. Bodge,* 76 Neb. 31, 106 N.W. 1004 (1906), *rev'd on other grounds* 76 Neb. 35, 110 N.W. 1018 (1907); 45 C.J.S. *Insurance* § 470 (1946); *St. Paul Fire & Marine Ins. Co. v. Ruddy,* 299 F. 189 (8th Cir. 1924).

Obviously, Auto-Owners had knowledge of the alleged "fraudulent misrepresentation" at least by the time it filed its answer in this case. And even

though it relied upon rescission in its answer, it nevertheless stood by its earlier cancellation and kept the portion of the premium earned during the time the accident occurred. Having waived its right to rescind the policy from its inception and having elected to keep the policy in force until April 22, 1980, Auto-Owners became liable to defend Popish and Wrich and to pay any judgments which may be assessed against Popish and Wrich as covered by the policy.

Appellants jointly have requested the allowance of an attorney fee both in this court and in the trial court, pursuant to the provisions of Neb. Rev. Stat. § 44-359 (Reissue 1978). That section provides in part: "In all cases where the beneficiary, or other person entitled thereto, brings an action upon any type of insurance policy . . . the court, upon rendering judgment against such company, person or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his recovery, to be taxed as part of the costs. If such cause is appealed, the appellate court shall likewise allow a reasonable sum as an attorney's fee for the appellate proceedings . . . ." Because the plaintiffs in the court below and the appellants in this court include both the beneficiaries of the policy (i.e., Popish and Wrich) and Wrich's carrier, we are unable at this time to determine whether the provisions of § 44-359 should be applied. The appellants Popish and Wrich clearly are "beneficiaries" who have brought "an action upon" the liability insurance policy. Attorney fees under the statute are available for an insured who wins a declaratory judgment action against the insurer. *Herrera v. American Standard Ins. Co.*, 203 Neb. 477, 279 N.W.2d 140 (1979). However, the appellant Dairyland Insurance Company stands on different ground. Dairyland may be entitled to bring or join this declaratory judgment action because of the effect a judgment may have on its own liability to Wrich on

a separate policy. But, as between Dairyland and Auto-Owners, this suit is merely an adjustment of liability priorities and cannot be seen as "an action upon" the policy issued by Auto-Owners to Popish. The appellants Richard A. Wrich and Judith C. Popish are therefore given 10 days from the date of the issuance of this opinion in which to make a showing to this court of whether they have incurred any expenses by way of attorney fees in connection with either the trial of this case in the District Court or its appeal in this court. See *Hawkeye Casualty Co. v. Stoker, supra.* The appellees are given 5 days thereafter to make any countershowing. Upon the filing of such showings, the court will give further consideration to the request for attorney fees. Except, therefore, for the matter of attorney fees, which the court reserves at this time, the judgment of the trial court is reversed and the cause remanded with instructions to enter a judgment for the appellants as prayed for in their petition.

REVERSED AND REMANDED WITH DIRECTIONS.

BOSLAUGH, J., concurs in the result.