483 So.2d 892 (1986)
Ava R. MARTINEZ and Howard Barnes, Appellants,
v.
GENERAL INSURANCE COMPANY, Appellee.
No. 85-1204.
District Court of Appeal of Florida, Third District.
March 4, 1986.
*893 Feuer, Lustig & Schillinger and Lee H. Schillinger, Miami, for appellants.
Joe N. Unger, Kopplow & Flynn, Miami, for appellee.
Before BARKDULL, NESBITT and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The appellants' primary argument on this appeal is that the insurer's retention of the portion of the premium pro rated to the effective date of the cancellation of the policy was an election which precluded the insurer from claiming and the trial court from ruling that there was no coverage for an accident that occurred during the period before the cancellation became effective.
On January 30, 1984, Ava Martinez renewed an existing policy of automobile insurance issued by General Insurance Company (General). At the time of filling out and executing the renewal application, Martinez's son, Howard Barnes, who had first secured a driver's license in December 1983, was living in his mother's household. Martinez's application failed to disclose this fact.
Barnes, still residing with his mother and driving one of the vehicles listed in the policy, was involved in an accident on April 25, 1984. In June 1984, shortly after it was first apprised of the accident, General notified Martinez that it was declining coverage for the accident on the ground that the omission of Barnes' name from the renewal application was material within the meaning of Section 627.409(1), Florida Statutes (1983),[1] and prevented recovery. Several days later, Martinez received from General a notice that the policy was being cancelled effective August 2, 1984.[2] The insurer refunded to Martinez that part of the premium on the policy which would have paid for insurance from August 2, 1984, through the end of the policy period.
There is no doubt that the trial court, as the trier of fact, was entitled to find from the evidence presented that the omission of Barnes' name was sufficiently material to the insurer's acceptance of the risk to warrant a denial of coverage, even if the omission was unintentional. See Continental Assurance Co. v. Carroll, 485 So.2d 406 (Fla. 1986); Life Insurance Co. of *894 Virginia v. Shifflet, 201 So.2d 715 (Fla. 1967). The appellants contend, however, that since the insurer, with knowledge of the material omission, chose to keep the portion of the premium earned during the period in which the accident occurred, rather than to rescind the policy from its inception, it thereby effectively reaffirmed the policy and thus waived its right to deny coverage. They rely on Dairyland Insurance Co. v. Kammerer, 213 Neb. 108, 327 N.W.2d 618 (1982), which undeniably supports their position. In the view of the Nebraska court,
"[w]hen learning of the alleged fraud [that the driver of the vehicle was a member of the insured's household], [the insurer] had two choices. Either it could determine that, because of the alleged fraudulent statements made to it, it wished to cancel the policy from its inception and return to [the insured] the entire premium, on the theory that the policy never came into existence, or it could waive the alleged fraud, keep the premium earned to date of cancellation, and accept responsibility under the policy. If [the insurer] elected to rescind the policy from its inception, it must place [the insured] back in the same position [she] was in before the policy was issued, including returning to her all of the premium. But [the insurer] chose not to do so. Both by its notice of cancellation and by its retention of a portion of the premium, [the insurer] elected to recognize the existence of the policy from the date of its issuance ... until the date of its declared cancellation... . Having made that choice, [the insurer] acknowledged that the policy was in effect on the date of the accident . .. and it therefore became liable under the policy. [The insurer] could not, on the one hand, recognize the existence of the policy and retain a portion of the premium and, on the other hand, deny the coverage afforded by the policy because of alleged fraudulent misrepresentations."

Dairyland Insurance Co. v. Kammerer, 213 Neb. at 110, 327 N.W.2d at 620.
We do not agree with the Nebraska court. The omission in question in Kammerer and here did not serve to vitiate the policy from its inception for claims unrelated to the omission. The failure to list Barnes on the renewal application precluded coverage only for a claim arising out of Barnes' driving a vehicle insured under the policy. Mrs. Martinez herself was covered throughout the entire period that the policy was in force, and it is this coverage, and no other, that was acknowledged by the insurer when it retained the premium. Where an omission or misrepresentation goes to the entirety of coverage, rescission and a return of the premium paid may be a proper remedy. However, to require the insurer, as the Nebraska rule does, to return the premium to the insured where the materially false statement or omission results, as here, in a denial of coverage only for a risk never assumed by the insurer or paid for by the insured is to give the insured an undeserved windfall  coverage for nothing. Accordingly, we reject the appellants' argument and affirm the judgment under review.
Affirmed.
NOTES
[1] Section 627.409(1), Florida Statutes (1983), provides:

"(1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
"(a) They are fraudulent;
"(b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or
"(c) The insurer in good faith would either not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."
[2] This notice of cancellation was sent pursuant to Section 627.7281, Florida Statutes (1983), which requires that the insured be given at least forty-five days' notice before the cancellation becomes effective.