[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13269

_____

D.C. Docket No. 0:11-62723-KMW

REMUS PERICLES,
assignee, individually and as father
and natural guardian of J.P., a minor,

                                                        Plaintiff-Appellant,

versus

MGA INSURANCE COMPANY, INC.,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 28, 2014)

Before HULL, BLACK and FARRIS,[*] Circuit Judges.

PER CURIAM:

---

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Plaintiff-appellant Remus Pericles appeals the district court's grant of defendant-appellee's MGA Insurance Company, Inc.'s ("MGA") motion for summary judgment on Pericles's claims alleging breach of an insurance contract and common law bad faith.  Pericles also appeals the district court's denial of his motion for summary judgment.  After careful review of the record and the briefs, and with the benefit of oral argument, we affirm.[1]

## I.  FACTS AND PROCEDURAL HISTORY

This case arises out of an October 4, 2007 automobile accident in which a vehicle being driven by the son of Haikaz Bedros Alboyadjian collided with a bicycle being ridden by the plaintiff's minor daughter, J.P.

### A.    The 01 Automobile Insurance Policy

From March 25, 2007 until September 25, 2007, the vehicle involved in the accident, a 1997 GMC Jimmy pick-up truck, was insured under an automobile liability policy through defendant MGA.[2]  The policy's number was 01MGFC0310395-01.  We refer to this policy as the "01 policy."  In addition to Alboyadjian, his son was a named insured on the 01 policy.

### B.    The September 25 Expiration of the Policy

---

[1]We issued a jurisdictional question in this case, and the parties' responses to the question satisfy us that complete diversity exists.

[2]The letterhead at the top of Alboyadjian's policy stated: "The Gainsco Companies." Alboyadjian's insurance agent testified that there was a relationship between Gainsco and MGA, although he did not explain that relationship.  For purposes of this appeal, it is undisputed that defendant MGA provided insurance, either directly or through an affiliated company, Gainsco.

On August 10, 2007, more than one month before the policy's expiration, MGA sent Alboyadjian a notice informing him that a minimum payment of $215.77 was due by August 25, 2007 "[i]n order to keep [his] coverage uninterrupted." The notice stated that if Alboyadjian failed to make this minimum payment, the policy would "expire at 12:01 a.m. on 9/25/2007." That notice indicated that, if Alboyadjian made the required payment, MGA would issue him a new policy, effective from September 25, 2007 until March 25, 2008. This new policy would have a policy number 01MGFC0310395-02. We refer to this policy as the "02 policy."

On September 10, 2007, MGA sent Alboyadjian another notice, this time informing him that he needed to make a minimum payment of $421.54 by September 25, 2007 "[i]n order to keep [his] coverage uninterrupted."

Alboyadjian received at least one of these notices. Nevertheless, he failed to timely make the minimum premium payments. Accordingly, on September 25, 2007, MGA sent Alboyadjian yet another notice, this one stating: "YOUR POLICY HAS EXPIRED!" Below this statement, the notice said: "Your automobile insurance policy, 01MGFC0310395-01 expired on 9/25/2007 at 12:01 a.m. Ours [sic] records indicate the required down payment for renewal of this policy has not been received." After receiving this notice, Alboyadjian understood that the 01 policy was no longer in effect.

3

## C.    The October 4 Accident

The accident at issue occurred on October 4, 2007—nine days after the 01 policy expired.  The site of the accident was just one street from Alboyadjian's home and Alboyadjian learned about the accident shortly after it happened.  Alboyadjian testified that, as soon as he was informed of the accident, he "just r[a]n" to the scene.

Upon arriving, Alboyadjian learned that his son was uninjured, but that plaintiff Pericles's daughter, J.P., had been hurt.  There were approximately five police officers present when Alboyadjian came, and an ambulance arrived shortly thereafter.  A helicopter was also hovering above the scene and Alboyadjian assumed that the helicopter was "probably . . . waiting to see if it's [an] emergency."

The helicopter later descended and airlifted Pericles's daughter.  Doctors determined that the plaintiff's daughter had suffered a broken leg.

## D.    The Issuance of the 02 Policy

At around 9:15 AM, the very next day, Alboyadjian went to the office of his insurance agent and attempted to obtain a new insurance policy.  Alboyadjian paid $452.00 to MGA.

MGA required Alboyadjian to sign a "Request for Reinstatement" form.  On this form, Alboyadjian stated:

4

I, <u>Haikaz Alboyadjian</u>, the named insured of the above policy, effective <u>10/5/07</u>, warrant that there have been no accidents, damages or happenings whatsoever during the period from <u>9/25/07</u> 12:01 a.m. to <u>10/5/07</u> (current date) <u>9:15 AM</u> (current time) that have resulted or may result in claims against my insurance policy with MGA Insurance Company, Inc. for any loss and/or expense for which said company would be liable under the above numbered policy if it is reinstated.

It is understood that the above statement is the consideration for reinstatement of the above numbered policy as of the cancellation if acceptable to MGA Insurance Company, Inc.  It is further understood that if a loss did occur during the period described above, no coverage will be afforded for said loss under this policy.

Alboyadjian signed the form and did not inform MGA of the October 4 accident.

After Alboyadjian signed the Request for Reinstatement and made the premium payment, MGA issued him a new policy—the 02 policy—retroactively effective from September 25, 2007 until March 25, 2008.   Accordingly, there was no lapse in Alboyadjian's coverage between September 25 and October 5.

The new policy included the following provision relevant in this case: "This policy may be cancelled, rescinded or a claim denied if You have concealed or misrepresented any material fact or in any case of fraud, attempted fraud or false swearing by You touching upon any matter relating to this insurance or the subject thereof, whether before or after a Loss."[3]

E.    **The Plaintiff's Claim and State Court Complaint**

---

[3]It is unclear whether the policy provision in the record was a part of the 01 policy or the 02 policy.  However, the parties do not dispute that the 02 policy contained the provision quoted above.

On October 12, 2007, MGA learned that plaintiff Pericles had filed a claim under Alboyadjian's policy for injuries his daughter sustained during the October 4 accident. A few days later, MGA sent Alboyadjian a letter informing him that it would "not be able to honor [the] claim and or provide a defense in this matter." MGA's reason for declining the claim was that Alboyadjian's policy—the 01 policy—"expired prior to the date of loss."

Alboyadjian continued to make monthly premium payments through March 2008 and paid a total of $1,214.68 for the policy. Approximately $67 was applicable to the period during which the policy retroactively applied and the accident occurred (from September 25 to October 5, 2007).

In 2010, MGA sent Alboyadjian additional letters further explaining that it would not honor the claim because the 01 policy had been cancelled before the accident. MGA sent a similar letter to Pericles's attorney.

Thereafter, plaintiff Pericles filed a complaint in Florida state court against Alboyadjian seeking to recover for his daughter's injuries. After a bench trial, Pericles obtained a judgment against Alboyadjian for $581,234.90. Thereafter, Alboyadjian assigned to Pericles his rights under his insurance policy.

## F.    District Court Proceedings

Pericles then sued MGA in Florida state court. Pericles's complaint alleged that: (1) MGA's denial of coverage for the October 4 accident constituted a breach

6

of the 02 automobile insurance policy; and (2) MGA committed the common law tort of bad faith by denying coverage. MGA removed the case to the federal district court based on diversity jurisdiction.

After discovery, both parties moved for summary judgment. The district court held a hearing and then granted defendant MGA's motion for summary judgment, denied Pericles's motion, and entered judgment in favor of MGA. Pericles timely appealed.

## II.  DISCUSSION

The only issue on appeal is whether defendant MGA could, under the policy, deny the October 4-accident claim and was thus entitled to summary judgment. We conclude that MGA acted consistent with the policy, and thus affirm.[4]

In this diversity action involving the interpretation of an insurance contract, we apply Florida law. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). Under Florida law, we interpret the policy pursuant to its "plain meaning, with any ambiguities construed against the insurer and in favor of coverage." U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007). A policy provision is ambiguous when "the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding

---

[4]We review de novo a district court's grant of summary judgment and draw all inferences and review all evidence in the light most favorable to the non-moving party. Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012). "Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (quotation marks omitted).

coverage." Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082, 1086 (Fla. 2005).

Moreover, "[a] provision is not ambiguous simply because it is complex or

requires analysis." Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007). Thus,

"if a policy provision is clear and unambiguous, it should be enforced according to

its terms whether it is a basic policy provision or an exclusionary provision." Id.

(quotation marks omitted).

Pericles's complaint alleged that MGA breached its contract with

Alboyadjian by denying the claim resulting from the October 4 accident. But, the

unambiguous policy language permitted MGA to deny a claim if Alboyadjian

"concealed or misrepresented any material fact or . . . attempted fraud . . . touching

upon any matter relating to this insurance . . . whether before or after a Loss."

Here, the insured, Alboyadjian, made a material misrepresentation, and

therefore MGA could deny the claim. Specifically, Alboyadjian signed the

Request for Reinstatement, in which he warranted "that there have been no

accidents, damages or happenings whatsoever during the period [while the policy

was lapsed] that have resulted or may result in claims against my insurance policy

with MGA." The evidence in the record showed that Alboyadjian knew that

statement to be false at the time he signed the Request for Reinstatement. Just the

day before Alboyadjian signed the statement, he was at the scene of the accident at

issue. When he was there, Alboyadjian: (1) observed that the insured vehicle was

8

involved in a collision; and (2) that Pericles's daughter incurred injuries as a result of the collision.  Based on these observations, Alboyadjian could not have reasonably believed that there had "been no accidents . . . that . . . may result in claims against [his] insurance policy."

Pericles argues otherwise, contending that Alboyadjian did not know that the statement was false at the time he signed the Request for Reinstatement.  Pericles points to deposition testimony where Alboyadjian stated that his son did not receive a ticket for the accident and that he did not think that his son had done anything wrong to cause the accident.  Pericles therefore argues that, from Alboyadjian's perspective, the responding police officers' failure to ticket Alboyadjian's son "was a legal determination that his son was not at fault and thus he had good reason to believe that there had been no accidents that had resulted or may result in claims against his insurance policy."

Pericles's argument is unavailing.  Under Florida law, a misrepresentation, omission, concealment of fact, or incorrect statement in an application for an insurance policy can prevent recovery under the policy if "[t]he misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer."  Fla. Stat. § 627.409(1)(a); see also United Auto. Ins. Co. v. Salgado, 22 So. 3d 594, 601 (Fla. 3d DCA 2009) ("[W]here a misstatement or omission materially affects the

9

insurer's risk, or would have changed the insurer's decision whether to issue the policy and its terms, the statute may preclude recovery.").

"[M]isrepresentations need not be knowingly made in order to void [an insurance] policy." Cont'l Assurance Co. v. Carroll, 485 So. 2d 406, 408 (Fla. 1986). It is undisputed that Alboyadjian made a misrepresentation here, and that the misrepresentation was material. As the district court pointed out, whether Alboyadjian subjectively believed that a claim could result from the October 4 accident "goes to whether he intended to misrepresent events," and Alboyadjian's subjective intent is irrelevant in our analysis. See id.

Pericles also argues that MGA's acceptance of premium payments required MGA to cover Pericles's claim and defend Alboyadjian. He contends that under Florida law, once MGA learned of the accident and continued to accept premium payments, it could not then disclaim coverage for the accident. In support of this argument, Pericles relies on Mixson v. Allstate Insurance Co., 388 So. 2d 608 (Fla. 3d DCA 1980), but that case does not help Pericles here.

In Mixson, the insurance company sent the insured a notice that his premium payment was overdue and the policy would be cancelled if the insured did not make a payment by a designated date. Id. at 609. The insured failed to pay, but did make a premium payment more than two weeks after the deadline. Id. The insurance company accepted the payment, and the insured filed a claim based on

10

an accident that occurred during the period between the deadline and the date on which the insurer accepted the past-due payment. Id. The insurance company denied coverage on the basis that the policy had lapsed at the time of the accident. Id. Reversing the trial court's ruling in favor of the insurance company, the Florida appellate court concluded that "the unconditional acceptance of the . . . payment constituted a waiver of the insurer's right to contend the policy ha[d] lapsed." Id.

The crucial difference between Mixson and this case is that Mixson did not involve a fraudulent misrepresentation by the insured. In Mixson, the insurer did not ask the insured whether any accidents had occurred during the period the policy was expired; here, MGA did ask Alboyadjian that question. Alboyadjian answered falsely. Thus, MGA was justified in denying coverage for this accident. See Fla. Stat. §627.409(1)(a).

Another distinction between Mixson and this case is that Mixson addressed an insurer's accepting late payments on a scheduled payment plan and then claiming the policy had lapsed during the amount of time the payment was late. 388 So. 2d at 609. In contrast, this case involves a policy that actually expired at the end of its term and an insurer issuing a new policy, which applied retroactively and prospectively, after accepting a renewal payment. In Progressive Express Insurance Co. v. Camillo, 80 So. 3d 394 (Fla. 4th DCA 2012), the state appellate

11

court distinguished late payments and renewal payments on expired insurance policies and held that "where a policy expires without the insured making a renewal payment, and a loss occurs after the expiration of the policy period, the insurer may subsequently accept premium payments and reinstate the policy prospectively without waiving the right to deny coverage for the loss." Id. at 401.

Further, because of the misrepresentation, MGA could deny coverage for the October 4 accident without cancelling the policy and refunding Alboyadjian's premium payment or any portion thereof. See Martinez v. Gen. Ins. Co., 483 So. 2d 892, 894 (Fla. 3d DCA 1986). Under Florida law, when a misrepresentation in a policy application does not go to the entirety of coverage, an insurer may choose to deny a claim due to the misrepresentation without cancelling the policy and refunding a premium payment. Id. This is because, as is the case here, MGA never assumed the risk of an undisclosed accident which occurred prior to October 5, whereas Alboyadjian received benefits under the policy. Id. ("[T]o require the insurer . . . to return the premium to the insured where the materially false statement or omission results . . . in a denial of coverage only for a risk never assumed by the insurer or paid for by the insured is to give the insured an undeserved windfall-coverage for nothing."); cf. Gonzalez v. Eagle Ins. Co., 948 So. 2d 1, 3–4 (Fla. 3d DCA 2006) (explaining if a claim is totally unrelated to the

12

omission causing the denial of the claim, the insured is entitled to a refund of the premiums paid).

Among the benefits Alboyadjian received for the retroactive application of the new 02 policy were: (1) MGA did not report to the Florida Department of Highway Safety and Motor Vehicles ("DMV") that Alboyadjian's insurance was expired during September 2007 to March 2008, and thus the DMV did not fine Alboyadjian for a lapse of coverage; and (2) Alboyadjian was eligible for a discount from MGA for that new policy based on prior continuous coverage.

Pericles's argument that MGA should have cancelled the policy is further undercut by the fact that Alboyadjian continued to make premium payments even after MGA denied his claim for the October 4 accident, and there is no suggestion that MGA would not have provided coverage for accidents occurring after October 5.

Here, Alboyadjian's 01 policy had expired at the time of the October 4 accident. Although the 02 policy retroactively applied to the time of the accident, Alboyadjian obtained this retroactive coverage through a misrepresentation and the 02 policy permitted MGA to deny a claim based on a misrepresentation. Accordingly, MGA was entitled to summary judgment.

## III. CONCLUSION

For the foregoing reasons, we affirm.

**AFFIRMED.**